(116 So. 151)
### NEW ENGLAND MUT. LIFE INS. CO. v. REYNOLDS. (3 Div. 830.)

Supreme Court of Alabama. March 22, 1928.

1. Insurance ☞362—Proof of disability held condition to waiver of premium under life policy providing therefor, notwithstanding insured became insane.

Under life policy containing a provision waiving premiums in the event of permanent total disability of insured on being furnished due proof thereof, furnishing of such proof of disability constituted a condition precedent to waiver of premium, notwithstanding fact that insured was insane on date premium became due and continued in such state until his death.

2. Insurance ☞367(2)—Insurer paying cash on policy loan without notice of insured's insanity cannot be held constructively in possession of cash available for extended insurance.

Where insured received and held cash paid by insurer on policy loan, and transaction was without notice to insurer that insured was at such time insane, insurer cannot be treated as still constructively in possession of cash paid thereon to be made available for extended insurance.

3. Insurance ☞357—Note as part payment of premium, taken subject to condition of paying balance in cash and subsequently returned, did not extend insurance.

Note for use in part payment of premium due on date of execution, taken subject to condition that balance of premium be paid in cash and subsequently returned on failure to make such payment, cannot be held to have extended insurance beyond date premium was due.

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

Action by Leona Reynolds against the New England Mutual Life Insurance Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The suit is upon a policy of life insurance. Defendant's special plea No. 5 is as follows:

"For further answer to said complaint the defendant avers: That the policy of insurance sued on contained the following provision: 'In case of the nonpayment of any premium when due or during the period of grace this policy shall cease to be in force and shall have no value except as provided by the nonforfeiture provisions hereinafter set forth.' That the forfeiture provisions referred to are as follows:" (Here follows the usual provisions for cash surrender value, paid-up insurance, or extended insurance.)

"Defendant avers that in the application for said policy the insured requested that in a case of failure to pay premiums when due that the extended insurance provision of the policy should become automatic. And defendant avers that said policy of insurance was assigned to the defendant by said John B. Reynolds on, to wit, the 5th day of August, 1925, as collateral security for a loan of, to wit, $216.50; that the said insured failed to pay the premium on said policy due November 12, 1925, and on, to wit, February 5, 1926, the defendant informed the insured and the plaintiff as beneficiary under said policy by letter that by the nonpayment of the premium due November 12, 1925, said policy had lapsed and that it was continued in force in accordance with the terms of the policy as extended term insurance for $1,780 from November 12, 1925, to September 30, 1926, when all liability of the company thereunder would cease and determine; and that the collateral policy loan certificate of $216.50 was canceled. The said policy with indorsement thereon that it was continued in force in accordance with the terms of the policy as extended term insurance from November 12, 1925, to September 30, 1926, when all liability of the company thereunder would cease and determine, was inclosed in said letter of February 5, 1926, to the said insured and to the plaintiff in this case.

"Wherefore, defendant says that said policy having expired on September 30, 1926, prior to the death of the insured on the 17th day of January, 1927, the defendant is not liable thereunder."

Plaintiff's special replication No. 2 reads:

"The policy upon which this suit is based contained a provision in substance as follows:

" 'Supplemental Agreement Waiving Premiums in the Event of Permanent Total Disability Occurring before Attaining the Age of Sixty-Five Years.—The premium payable by the terms of this policy includes an additional premium of 90 cents payable for 29 full years, or until the prior death of the insured, and in consideration of the payment of such additional premium the New England Mutual Life Insurance Company hereby agree to the following waiver of premium in the event of permanent total disability:

" 'If the insured, after payment of premium for one full year and before default in the payment of any subsequent premium, and before attaining the age of 65 years, and while this policy is in full force, shall furnish due proof to the company, at its home office in the city of Boston, that he has become wholly disabled by bodily injury or disease so that he is and will be permanently and continuously prevented from performing any work for compensation or profit or from following any gainful occupation, the company will waive payment of each premium as it thereafter becomes due during the continuance of such disability. The premiums so waived shall not be deducted from the sum payable under the policy, and the values provided for under "Nonforfeiture Provisions" and in the "Table of Loan, Cash, Paid-up and Extended Insurance Values" shall be the same as if the premiums had continued to be paid in cash to the company regularly when due.'

"Plaintiff further avers that said policy was issued on, to wit, November 12, 1917, and that the insured paid the premiums thereon for more than one full year, to wit, November 12, 1925; that before the premium due November 12, 1925, became in default, and while the insured was under the age of 65 years, to wit, while he was 45 years of age, the insured became wholly disabled by bodily injury or disease, so that he was and would be permanently and continuously prevented from performing any work for compensation or profit, or from following any gainful occupation, and the insured continued so disabled until his death on, to wit, January 17, 1927, said disability consisting in this: Before said premium became in default the insured became insane or non compos mentis, and such mental condition was proximately caused by a bodily disease, and he continued so insane or non compos mentis until his death, wherefore the plaintiff says that the defendant waived the payment of said premium."

Defendant by demurrer raised the point that the replication fails to aver proof of disability was furnished the insurer by the insured, or any one for him, or by the beneficiary as required by the waiver agreement; that the giving of such notice or proof is a condition precedent to the waiver of premium; that intervening insanity does not avoid or excuse compliance with this condition. The demurrer was overruled.

The same questions were presented by rejoinder, to which demurrer was sustained.

The evidence for defendant sustained the special plea. The evidence for plaintiff sustained the averment of the replication to the effect that before the lapse of the policy the insured became a non compos mentis, without physical or mental capacity to transact business, and so continued until his death some 13 months after the policy lapsed.

There was no evidence of proof of disability or notice thereof to the insurer at any time before the death of the insured. There was evidence that plaintiff, the beneficiary of the policy, had no knowledge of the existence of the policy or its conditions until after the death of the insured.

The trial court gave the affirmative charge for plaintiff.

Rushton, Crenshaw & Rushton, of Montgomery, for appellant.

It was error to hold that due proof to the company of insured's disability before default in payment of premium was excused by the fact that insured had become non compos mentis before default. Watts v. Metropolitan Ins. Co., 211 Ala. 404, 100 So. 812; N. Y.

L. Ins. Co. v. Alexander, 122 Miss. 813, 85 So. 93, 15 A. L. R. 314; Hipp v. Fidelity Mut. L. I. Co., 128 Ga. 491, 57 S. E. 892, 12 L. R. A. (N. S.) 319; Mid-Cont. L. I. Co. v. Skye, 113 Okl. 184, 240 P. 630; Hanson v. N. W. Mut. L. I. Co., 229 Ill. App. 15; Ill. Bankers' L. I. Ass'n, v. Byassee, 169 Ark. 230, 275 S. W. 519, 41 A. L. R. 379; Penn Mut. L. I. Co. v. Milton, 33 Ga. App. 634, 127 S. E. 798; Wick v. West. Union L. I. Co., 104 Wash. 129, 175 P. 953; Tyson v. Equitable Co., 144 Ga. 729, 87 S. E. 1055; Joyce, Ins. (2d Ed.) 12505; Thorenson v. Mass. Ben. Asso., 68 Minn. 477, 71 N. W. 668; Marti v. Mid-West. L. Ins. Co., 108 Neb. 845, 189 N. W. 388, 29 A. L. R. 1507. The terms of the policy constitute the terms of the insurer's liability. Mut. L. Ins. Co. v. Barrett, 215 Ala. 142, 110 So. 275. In order to affect the validity of the policy, the insanity must be at the time the transaction occurred. 32 C. J. 728. The court should never direct a verdict when the evidence is such as to afford a reasonable inference of the existence of any fact unfavorable to the right of the party asking the affirmative charge to a verdict. M. J. & K. C. R. Co. v. Bromberg, 141 Ala. 248, 37 So. 395; Birmingham R. Co. v. Enslen, 144 Ala. 343, 39 So. 74; Shipp v. Shelton, 193 Ala. 658, 69 So. 102.

Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellee.

Insurance contracts are construed most favorably to the insured. Union Cent. Rel. Ass'n v. Johnson, 198 Ala. 488, 73 So. 816; Woodmen of the World v. Alford, 206 Ala. 18, 89 So. 528; Stokely v. Fid. & Cas. Co., 193 Ala. 90, 69 So. 64, L. R. A. 1915E, 955; Travelers' Ins. Co. v. Plaster, 210 Ala. 607, 98 So. 909. The burden is on the insurer to plead and prove forfeiture and provision of the policy for forfeiture are construed strongly in favor of insured. Watts v. Metropolitan L. I. Co., 211 Ala. 404, 100 So. 812; Equitable Life v. Golson, 159 Ala. 410, 48 So. 1034. Plaintiff was entitled to the affirmative charge because defendant failed to meet the burden of proving its pleas of forfeiture or lapse of the policy for nonpayment of premium, Watts v. Metropolitan L. I. Co., supra; and because plaintiff's second replication was proved without dispute and constituted a complete answer to defendant's pleas of forfeiture. Fire Ins. Co. v. Boykin, 79 U. S. (12 Wall.) 433, 20 L. Ed. 442; 1 C. J. 472; 18 L. R. A. (N. S.) 109, note; 27 L. R. A. (N. S.) 319, note; Ann. Cas. 1914D, 414, note; 4 Cooley's Briefs (1st Ed.) 3462; 7 Cooley's Briefs (1st Ed.) 1451; Marti v. Mid-West. Life Ins. Co., 108 Neb. 845, 189 N. W. 388, 29 A. L. R. 1507; Reed v. Loyal Protective Ass'n, 154 Mich. 161, 117 N. W. 600; Roseberry v. Amer. Benevolent Ass'n, 142 Mo. App. 552, 121 S. W. 785; Guy v. Casualty Co., 151 N. C. 465, 66 S. E. 437; Hayes v. Cont. Cas. Co., 98 Mo. App. 410, 72

S. W. 135; Woodmen Acc. Ass'n v. Pratt, 62 Neb. 673, 87 N. W. 546, 55 L. R. A. 291, 89 Am. St. Rep. 777; Comstock v. Frat. Acci. Ass'n, 116 Wis. 382, 92 N. W. 22; Pacific Mutual v. Adams, 27 Okl. 496, 112 P. 1026; Edgefield Mfg. Co. v. Maryland Cas. Co., 78 S. C. 73, 58 S. E. 969; Manufacturers' Acc. Indem. Co. v. Fletcher, 5 Ohio Cir. Ct. R. 633; Concordia Fire Ins. Co. v. Waterford, 145 Ark. 420, 224 S. W. 953, 13 A. L. R. 1387; Shafer v. U. S. Cas. Co., 90 Wash. 687, 156 P. 861; Curran v. Nat. L. I. Co., 251 Pa. 420, 96 A. 1041; Will & Baumer Co. v. Rochester Ins. Co., 140 App. Div. 691, 125 N. Y. S. 606.

BOULDIN, J. (after stating the facts as above). [1] We are of opinion that furnishing proof of disability to the insurer is made a condition precedent to the waiver of premium payments under the supplemental agreement set out in the special plea above. This agreement declares:

"If the insured * * * shall furnish due proof to the company, at its home office in the city of Boston, that he has become wholly disabled by bodily injury or disease, * * * the company will waive payment of each premium as it thereafter becomes due during the continuance of such disability."

The intervening clauses name the conditions under which such proof is allowable, and define the character of disability. They must all concur to make the waiver effective. But the furnishing of proof is the specific condition upon which the company "will" waive each premium "thereafter" to become due. "Thereafter" clearly refers to date of furnishing proof. The clause is in no way ambiguous or of doubtful meaning. The preceding paragraph recites the consideration upon which the insurer agrees to the "following waiver." A later clause provides that the insurer may, after acceptance of such proof as satisfactory, have a medical examination made, and if it appears the insured is able to perform work or engage in any occupation for compensation or profit, no further premiums will be waived.

The entire structure of the agreement negatives the idea of a self-operating waiver in the event of total disability, but imposes a contractual obligation on the company to waive premiums when "due proof" is furnished. Manifest reasons appear for thus limiting the agreement. The premium named in a policy of life insurance is the consideration for the contract. Its prompt payment is the life of the business. By the contract the renewal premium carries protection to a fixed date. Unless renewed by another stipulated premium it lapses, and the rights of the insured are measured by the nonforfeiture provisions, usually certain options for cash surrender value, paid-up insurance, or extended term insurance.

It is important that the status of each contract be known. Otherwise the insurer is

unadvised as to the amount of insurance outstanding—can make no accurate statement of resources and liabilities as often required by law. This case well illustrates the confusion which may ensue if the policy holder has a policy still in force by reason of a waiver of premiums without any notice thereof to the insurer. Here there was correspondence looking to payment of premium when due, notice of lapse for nonpayment, negotiations for examination and reinstatement, and, finally, a settlement surrendering the evidence of the policy loan, and showing the period of extended insurance—all received and apparently approved without a suggestion to the insurer that the insured had become insane. This status continued for about a year, when death of the insured intervened. It might have continued five or ten years.

It is further of importance that any issue as to the fact of disability be adjusted while the insured is living, not postponed until an issue must be made with the beneficiary after his death. In cases of insanity as the result of chronic disease, great difficulty may often arise in fixing the date when the border line is passed between mental capacity and incapacity to contract.

Appellee strongly relies upon the line of accident insurance cases, wherein the insured is required to give notice of his injury within a given time. In such cases the general rule is that if the insured is rendered physically or mentally incapable of giving notice as stipulated, it will be sufficient to give notice after such disability has passed, and if death ensues in the meantime, the indemnity will not be thereby forfeited. "The theory of these cases is that it could not have been in the contemplation of the parties that if the insured, who was required to give notice, was unable to do so by reason of the very accident against which indemnity was given, he should therefore lose such indemnity through no fault of his own." 4 Cooley's Briefs on Insurance (1st Ed.) p. 3462. See, also, 1 C. J. p. 472, note 4; 14 R. C. L. p. 133, § 504; Note 18 L. R. A. (N. S.) 109; Roseberry v. Amer. Ben. Ass'n, 142 Mo. App. 552, 121 S. W. 785; Woodmen Accident Ass'n v. Pratt, 62 Neb. 673, 87 N. W. 546, 55 L. R. A. 291, 89 Am. St. Rep. 777.

This is but an application of the general rule that insurance contracts are to be liberally construed in favor of the insured as often stated by this court. A construction whereby the contract is made to operate unfairly and oppressively is to be avoided.

We think there is a manifest distinction between that class of cases and this. In such accident cases, the provision is in the nature of a condition subsequent wherein the insurer defends against a liability already accrued. In this case the beneficiary relies upon the waiver clause to keep the policy alive, to excuse the payment of premiums.

The disability set up in accident cases is usually the result of the injury insured against. Here there is no insurance against disability, physical or mental.

Dealing with the argument that the insured could not be expected to make proof while mentally incapable of so doing, let us look at this policy without this waiver clause. In that event the actual payment of the premium when due could alone prevent a lapse of the policy. No sickness, insanity, or disability of any kind would excuse payment as stipulated. The law does not class such event as one rendering performance impossible, nor its requirement unreasonable. The insured, by his contract, assumes the risk of any disability rendering it impossible for him to make payment in person, and is thereby warned to place the beneficiary or some next friend in position to take care of his contract in such event. See note to 15 A. L. R. p. 318. Now, by the terms of the waiver agreement before us, the insured may pay the premium or cause it to be paid, or may avoid so doing by furnishing the proof of disability as stipulated. In case of insanity, the required proof could be furnished by the beneficiary or next friend, just as the premium could be paid.

The cases involving kindred provisions in life insurance policies sustain the views above expressed. Watts v. Metropolitan Life Ins. Co., 211 Ala. 404, 408, 100 So. 812; N. Y. Life Ins. Co. v. Alexander, 122 Miss. 813, 85 So. 93, 15 A. L. R. 314; Thompson v. Insurance Co., 104 U. S. 252, 26 L. Ed. 765; Wick v. W. U. Life Ins. Co., 104 Wash. 129, 175 P. 953; Mid-Continent Life Ins. Co. v. Skye, 113 Okl. 184, 240 P. 630; Hipp v. Fidelity Mut. Life Ins. Co., 128 Ga. 491, 57 S. E. 892, 12 L. R. A. (N. S.) 319; Tyson v. Equitable Life Assur. Soc., 144 Ga. 729, 87 S. E. 1055.

Appellee relies upon Marti v. Midwest Life Insurance Co., 108 Neb. 845, 189 N. W. 388, 29 A. L. R. 1507. In that case the court said: "The policy contains no limitation of time in which the proof of disability must be presented." Whether that court correctly construed the policy before it in that regard is not of concern here. The particular provision construed was not in the same terms as that here involved. That court did say the same principle applies as in accident cases. In this regard that case is not in harmony with others cited above.

[2] Touching the contention that the insurer had, or should have had, sufficient funds in hand to extend the insurance beyond the date of the death of the insured, little need be said. If it be true that the insured was insane in August, 1925, when he made application and got a policy loan in settlement of a prior loan obtained when not insane, with a balance of $19.13 cash paid on the draft of the insured, the evidence, without conflict, shows this transaction was

without notice of insanity, and in good faith. It was a completed transaction, in which the insured received and held this cash paid on his policy in the form of a loan. We know of no principle by which the company can be treated as still constructively in possession of this cash to be made available for extended insurance. 32 C. J. p. 734.

[3] With reference to the note for $18 made by the insured of date of November 12, 1925, to be used in part payment of premium due on that date, without question it was taken subject to the condition that the balance of the premium be paid in cash, and on failure to thus make the note available, it was returned. Under appellee's view the note was void, and subject to return for that reason.

Our conclusion is that under the undisputed evidence the plaintiff cannot recover. The affirmative charge should have been given for defendant as requested.

The judgment is reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.