20990. NORTHWESTERN MUTUAL LIFE INSURANCE CO. *v.* DEAN.

DECIDED MARCH 31, 1931.

*Colquitt, Parker, Troutman & Arkwright, Robert S. Sams*, for plaintiff in error.

*Thomas M. Stubbs, McDaniel, Neely & Marshall*, contra.

LUKE, J.    Agnes S. Dean, as beneficiary in a policy of insurance upon the life of her son, Sidney S. Dean, filed suit in the municipal court of Atlanta against the Northwestern Mutual Life Insurance Company, to recover the amount of the policy, originally $2500, but reduced by two loans secured by and charged against it, to the amount of $2024.30.

It appears from the petition that the policy was dated January 24, 1918; that all premiums were paid up to January 29, 1926; that some time prior to the latter date, and while the policy was in force, the insured became incapacitated by reason of a brain disease, to such an extent that he was wholly and permanently unable to perform any work for money compensation; that his mental condition grew progressively worse until he died completely insane on April 16, 1927, from blood poisoning or septicemia; that during

the entire period from the fall of 1924 until the time of his death he was incompetent, and that it was impossible for him to give notice of disability, required by the terms of a supplementary agreement, attached to and made a part of the policy, providing for a waiver by the insurer of payment of premiums by the insured, in the event of such total and permanent disability. It is alleged, that, because of his mental condition, rendering it impossible for the insured to give the required notice, he was legally excused and relieved from that requirement of the contract; that the conditions of the supplementary agreement, other than those relating to the giving of notice of disability, were fulfilled by the insured; that neither the beneficiary named in the policy, nor other members of her family had notice or knowledge of the existence of the policy of life insurance until after the death of the insured, and that, therefore, they were unable to give the notice required. It is averred that notice of death was given to the company; that proof of death was waived; and that, the company having refused payment, by reason of the premises, the petitioner was entitled to recover.

The agreement for waiver of premiums, or supplementary agreement hereinbefore referred to, omitting portions immaterial to the consideration and decision of the questions raised, is as follows: "In consideration of the payment of an extra premium of seventy-eight cents (first payment hereby acknowledged) with each annual premium required under said policy, it is agreed that if, after payment of premium for one full year and during the continuance of this agreement, the insured shall, prior to his 60th birthday anniversary, furnish proof satisfactory to the company that he has become totally and permanently disabled from any cause, and is physically and mentally incapacitated to such an extent that he is and presumably will be wholly and permanently unable to engage in any gainful occupation or perform any work for money compensation, the company, on receipt of such proof, will by suitable endorsement of this agreement waive the payment of the premiums thereafter falling due under said policy and this agreement during the continuance of such disability, except as hereinafter stipulated and agreed:" 1. Omitted as immaterial. "2. Notwithstanding the acceptance of proof of disability, the insured, or his legal representatives, shall annually on the anniversary of the

date of said policy, or within 31 days thereafter, file with the company a declaration of continued disability of the insured, and shall upon request, but not oftener than once a year, furnish proof thereof satisfactory to the company. If the insured, or his legal representatives, at any time after such waiver shall, upon such request mailed by the company to his or their last known address, fail to furnish such proof of continued disability, or if it shall appear to the company that the insured has so far recovered as to be able to perform work of any kind for compensation, gain or profit, then and in either such event said waiver shall be deemed to have failed, and any premium or premiums then or thereafter falling due under said policy and this agreement shall be payable in accordance with the terms thereof the same as if no waiver of premiums had been made." (Certain provisions omitted as immaterial.) Other provisions of the policy are: "6. The insurance under this policy is based upon annual premiums payable in advance, but payments may be made semiannually or quarterly, in advance, at the premium rates now in use by the company. Change may be made on any anniversary of the policy. No premium after the first will be considered paid (except it be duly charged as a premium loan) unless a receipt, signed by the president or secretary of the company and countersigned by an agent authorized to receive such premium, shall have been given therefor. Upon default in the payment of any premium this policy shall cease and determine except as hereinafter provided." "12c. Upon default in payment of premium, unless paid within the grace period, the amount of this policy and any existing dividend additions, less any indebtedness to the company on account hereof, shall be extended automatically as non-participating term insurance for such time from the date of default as the then cash surrender value will provide at the net single premium rate for the attained age of the insured according to the American Experience Table of Mortality with interest at three per cent."

A demurrer to the petition (after several amendments were made to meet some of the grounds of demurrer) was overruled. The controlling question raised by the demurrer, the final determination of which, by stipulation made a part of the record, will terminate the litigation, is simply whether or not, by reason of his alleged insanity, the failure of the insured to furnish satisfactory proof of

total and permanent disability was legally excused, in the circumstances averred.

Upon an appeal to the appellate division of the municipal court of Atlanta from the judgment overruling the demurrer, the judgment of the trial court was affirmed; and on certiorari the superior court of Fulton county affirmed the judgment. Error is assigned thereon.

In our examination of the question at issue, this court has the benefit of exhaustive briefs of counsel, wherein the opposing views are clearly and forcefully presented, and the decisions of other courts in kindred cases are skilfully collated. Counsel are in substantial accord in their statements of the fundamental rules to be followed by our courts in the construction of insurance contracts. "The cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction." Civil Code (1910), § 4266. "The contract of insurance should be construed so as to carry out the true intention of the parties." Civil Code (1910), § 2475. But, in the application of these general rules to an assemblage of specific facts, as in the present case, counsel find themselves diametrically opposed.

The main contention of the plaintiff below is that the requirement that proof of disability be furnished is a condition subsequent, not a condition precedent, in that, by its very terms, the proof is to be furnished subsequent to the occurrence of the disability. In support of this contention it is urged: "1. The insured being insane, it is impossible for him to give the notice, and this impossibility, occurring through no fault of his own, would not produce a forfeiture of the policy, but, to the contrary, would legally excuse the assured from giving the notice. 2. This rule has already been established in Georgia as to accident insurance, but the principle ought to apply with equal force to life insurance. 3. This rule has been applied almost without variation to policies of accident insurance in other states also. 4. It harmonizes with the law applicable to contracts generally. 5. It harmonizes with the general principles of construction of contracts in Georgia. 6. It has been applied in several jurisdictions in cases involving construction of life-insurance policies, where there were similar premi-

um-waiver clauses, and where notice was not given by the assured because of insanity, or other reason, rendering it impossible. 7. The rule being sound, it would seem to apply with equal force to policies of fire insurance, life insurance, or accident insurance."

The contention of the defendant below, on the other hand, is: "1. The requirement as to satisfactory proof of disability before the premium will be waived is a condition precedent. 2. The contract makes no provision that in cases of insanity the company will waive compliance with the conditions of the contract. 3. The contract not requiring the insured to personally make proof, but permitting others to do so for him, insanity offers no excuse for noncompliance with its express conditions. 4. As assured had theretofore failed to either pay the premiums or to take advantage of the benefits under the 'premium-waiver' clause, the policy had lapsed at the time of his death."

At the outset it will be observed that counsel have advanced wholly divergent views upon the question whether the requirement to furnish satisfactory proof of disability constitutes a condition precedent, or a condition subsequent, to the obligation of the company to waive payment of premiums thereafter falling due. In their efforts to determine the identical question in other cases, some of them involving similar provisions in insurance contracts, the courts seem to have indulged in many exceedingly refined distinctions. It is often a question of much difficulty, as, indeed, in the instant case, depending upon the intention of the parties, to be gathered from the language employed by them, from the agreement as a whole, and from the subject-matter to which it relates. "The rights of the parties are to be determined by the terms of the policy, so far as they are lawful. The language of the contract should be construed as a whole, and should receive a reasonable construction, and not be extended beyond what is fairly within the terms of the policy. Where the language is unambiguous and but one reasonable construction of the contract is possible, the court must expound it as made." *Cato* v. *Ætna Life Ins. Co.*, 164 *Ga.* 392, 398, citing *Yancey* v. *Ætna Life Ins. Co.*, 108 *Ga.* 349 (33 S. E. 979); *Wheeler* v. *Fidelity &c. Co.*, 129 *Ga.* 237 (58 S. E. 709); 1 C. J. 417, sec. 43.

With the foregoing rules of construction in mind, we are first to examine the nature of the contract between the parties named

therein. It provides that, in the event of the death of the insured within the stated period, the sum of money named will be paid to the beneficiary designated in the policy. In this respect, it is a life-insurance contract. In addition to this, the supplementary agreement, as part of the contract, provides for a waiver of the payment of the annual premiums, under the conditions hereinbefore recited. The agreement contains also the usual provisions for extended insurance and paid-up insurance, and other non-forfeiture and loan provisions. It is commonly recognized as a salutary agreement, so far as the insured is concerned, and one that tends to encourage thrift and provides, in some measure at least, security against financial dependence, in the event of either total disability or death. It is, or should be, the policy of the courts to administer the law with reference to such contracts in such manner that no hardship or injustice may be inflicted, either upon the insurer, the insured, or the beneficiary. So far as disability and death are concerned, it deals with pecuniary losses, and, by a system of actuarial calculations, distributes such losses among its policy-holders, through their contributions in the form of premium payments. Whatever may happen to enhance the risks assumed by the insurer must inevitably result in an increase of cost to the insured; the welfare of both being thus bound up together.

We next come to the supplementary agreement under whose provisions the present controversy arises. In the first place, we have decided that the language used is unambiguous; that only one reasonable construction of the agreement is possible; and that "the court must expound it as made." The offer on the part of the insurer,—in this instance an offer for an act,—is that, having paid the extra premium provided for, if the insured shall furnish proof satisfactory to the insurer that he has become totally and permanently disabled from any cause and is mentally or physically incapacitated, the insurer, on receipt of such proof, will by suitable endorsement waive the payment of the premiums thereafter falling due. It is evident that failure of the insured to furnish the required proof in no event can work a forfeiture of the policy. The provisions for extended insurance are automatic. At the very most, the insured, in this case, failing to furnish the required proof, would merely be deprived of his right to exemption, during the continuance of such disability, from the payment of premiums.

The exemption is secured to the insurer under the terms of the agreement at all times during the continuance of disability, and the exemption is to be awarded if the required proof be furnished at any time during that period. It is not disability alone that entitles the insured to the exemption; nor is it the payment of the extra premium, plus the disability; it is the payment of the extra premium, plus the disability, plus the furnishing of proof thereof. It would appear that all these elements of the arrangement are interdependent. It is conceivable that the insured, from one motive or another, might intentionally refrain for a time from furnishing such proof, though total disability had actually occurred. In any event, the agreement contemplated that the required proof might be furnished by the representatives of the assured. (See paragraph 2, excerpt quoted above.)

It would seem that disability by reason of insanity was in the contemplation of the parties when the contract was entered into,—in the legal sense at least,—since the agreement specifically provides that if the insured becomes mentally incapacitated (the premiums having been paid and the proof having been furnished), the exemption from premium payments will be awarded. Indeed, it hardly seems possible that a person may be "mentally incapacitated" without being afflicted with insanity, since the latter term includes in its widest sense all morbid conditions of the mind due to diseased action of the brain or nervous system. In view of these considerations, then, upon what sound theory may this court hold that the insanity of the insured in this case legally excused the failure to furnish the required proof? It is the settled law that insanity of the insured does not excuse failure to pay the premiums, which failure, in numerous instances, works a forfeiture of the policy of insurance; and, a fortiori, in our opinion the law does not excuse the failure to furnish a required proof which, in this case, merely affects the right to exemption from premium payments.

Courts can not permit their judgments to be influenced by sentiment in such cases, though they disappoint some cherished hopes and expectations; and the sacred right of contract must not be unnecessarily invaded or impaired by judicial interpretation. To vary the contract of the parties by recourse to fantastic refinements and distinctions is as much an offense against justice as an unjust judgment deliberately pronounced. We are persuaded, not only that

our views of the instant case are in accord with the principles of justice and right, but that a contrary decision, if adopted as a precedent in other like cases, would open avenues for the perpetration of frauds upon the insurance companies.

Finally, while we find no· identical case reported among the decisions of either of our appellate courts, the views expressed in this case in no wise conflict with the principles followed in similar cases. Most of the decided cases to which we have looked for precedent and authority deal with the consequences of delay, not of failure, to give required notice or to furnish required proof. In many instances they are to be distinguished in that regard from the case at bar.

Therefore, in our opinion, the judge of the superior court erred in overruling the certiorari.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*