158 So. 729

## McCUTCHEN v. ALL STATES LIFE INS. CO.

### 6 Div. 584.

Supreme Court of Alabama.
Oct. 18, 1934.

Rehearing Denied Jan. 24, 1935.

For other cases see same topic and KEY NUMBER in all Key Number Digests and Indexes

Harsh, Harsh & Hare, of Birmingham, for appellant.

Benners, Burr, McKamy & Forman and Grady W. Patterson, all of Birmingham, for appellee.

618

BOULDIN, Justice (after stating the facts as above).

This court in two recent cases has dealt with policy provisions of similar import to those here involved.

The first of these (New England Mut. Life Ins. Co. v. Reynolds, 217 Ala. 307, 116 So. 151, 152, 59 A. L. R. 1075) dealt with a stipulation in a policy of life insurance, saying: " ' "If the insured, after payment of premium for one full year and before default in the payment of any subsequent premium, and before attaining the age of 65 years, and while this policy is in full force, shall furnish due proof to the company, at its home office in the city of Boston, that he has become wholly disabled by bodily injury or disease so that he is and will be permanently and continuously prevented from performing any work for compensation or profit or from following any gainful occupation, the company will waive payment of each premium as it thereafter becomes due during the continuance of such disability." ' "

We held that, under such provision, "furnishing proof of disability to the insurer is made a condition precedent to the waiver of premium payments."

This holding is now questioned as unsound, and we are asked to reconsider same.

We have examined with care the cases cited in briefs on both sides.

We review briefly the late cases, decided since the Reynolds Case, supra, involving waivers of premiums upon proof of disability; several of them disability due to insanity.

Bergholm v. Peoria Life Ins. Co., 284 U. S. 489, 52 S. Ct. 230, 76 L. Ed. 416, was an action for life and disability benefits. The policy contained the usual stipulation: "If any pre-

mium is not paid on the date when due, this policy shall cease and determine." It then stipulated:

" 'Upon receipt by the Company of satisfactory proof that the Insured is totally and permanently disabled as hereinafter defined the Company will

" '1. Pay for the Insured all premiums becoming due hereon after the receipt of such proof and during the continuance of the total and permanent disability of the Insured and will also

" '2. Pay to the Insured a Monthly Income for life of 1% of this Policy; The first payment of such income to be paid immediately upon receipt of such proof. * * *

" '3. * * * To entitle the Insured to the above Total and Permanent Disability Benefits this policy at the time of making claim for such benefits must be in full force and all premiums becoming due prior to the time of making claim must have been duly paid. * * *' "

The evidence supported a finding "that the insured was totally and permanently disabled from a time before the premiums first became in arrears, and that this condition continued until his death; but no proof thereof was furnished to the company."

Said the court: "Here the obligation of the company does not rest upon the existence of the disability; but it is the receipt by the company of proof of the disability which is definitely made a condition precedent to an assumption by it of payment of the premiums becoming due after the receipt of such proof. The provision to that effect is wholly free from the ambiguity which the court thought existed in the Marshall policy."

The "Marshall policy" referred to was that presented in Minnesota Mut. Life Ins. Co. v. Marshall (C. C. A.) 29 F.(2d) 977. The two cases were differentiated, and the soundness of the Marshall Case, therefore, not questioned.

Egan v. New York Life Ins. Co. (D. C.) 60 F.(2d) 268, was strictly analogous to our Reynolds Case. Disability by insanity had intervened while the policy was in force, but no proof thereof had been furnished. Said the court:

"The condition is not, 'if the assured becomes disabled,' but is, if 'the company receives due proof' of the disability, it will waive payment of premiums. To give this any other meaning than the notice of disability was the requisite would be to twist and torture language.

"The promise of the company was to do something if this condition precedent were complied with, viz. to waive payment of premiums. Until such condition was complied with, no such obligation existed." Egan v. New York Life Ins. Co. (D. C.) 60 F.(2d) 268, 269.

This case was affirmed by the Circuit Court of Appeals, Fifth Circuit, in an opinion by Judge Foster, concluding thus: "The contract clearly contemplates that, if for any reason the insured is unable to promptly make proof of his disability warranting the suspension of premiums and the payment of the annual installments, some one else in interest must do so for him. This is a condition precedent necessary to be complied with to fix liability under the policy. It is very material to the risk that proof of total disability be furnished promptly and while the policy is kept in force by the payment of premiums. The provisions of the policy so requiring are not to be considered waived or rendered inoperative simply because of misfortune overtaking the insured. Bergholm v. Peoria Life Ins. Co., 284 U. S. 489, 52 S. Ct. 230, 76 L. Ed. 416." 67 F.(2d) 899, 900.

Berry v. Lamar Life Ins. Co., 165 Miss. 405, 142 So. 445, 145 So. 887, was also strictly analogous to our Reynolds Case. The decision was the same in effect and upon similar reasoning, expressly reaffirming New York Life Ins. Co. v. Alexander, 122 Miss. 813, 85 So. 93, 15 A. L. R. 314, cited in the Reynolds Case.

Smith v. Missouri State Life Ins. Co., 134 Kan. 426, 7 P.(2d) 65, likewise presented the same situation as in our Reynolds Case, supra, a similar stipulation, for waiver of premiums, and disability from insanity. The court reviews the cases, pro and con, and quotes with approval from the Reynolds Case. Says the Kansas court: "It is impossible to entirely reconcile the two lines of authority. We think, however, that there is a distinction, in that in the one line of cases the courts have gone far afield to find an ambiguity in the contract, and have overlooked the fact that the contract does not pretend to insure against disability, but merely makes disability, when coupled with proof or notice to the company, a settlement or waiver of the premium. The contract is made for the benefit of the insured. On the one hand, the company obligates itself, in the event of total disability, to carry the insurance without charge to the insured, and, on the other hand, the insured obligates himself to furnish, while the policy is in force, proof of such disability.

The contract is neither unreasonable nor harsh." Smith v. Missouri State Life Ins. Co., 134 Kan. 426, 7 P.(2d) 65, 69.

Much more is said to justify this holding.

Again, Reynolds v. Travelers' Ins. Co. (Wash.) 28 P.(2d) 310, decided the present year, was an action for the life benefit and also for disability benefits. The stipulation as to waiver of premiums was to like effect as in our Reynolds Case, supra, and total disability from insanity intervened, incapacitating the insured to personally make proof while the policy was in force.

The Washington court first notes that, under the well-settled law of life insurance, insanity will not excuse the payment of the required premiums to prevent a lapse of the policy according to its terms. The opinion proceeds: "Now, if insanity does not excuse the failure to pay premiums, then there can be no good reason why it should excuse the failure to furnish proof of disability. It is the proof of disability that excuses the failure to pay the premiums. The very purpose of disability insurance is to provide an income during such disability, not to accumulate a fund for the benefit of a third party beneficiary. Such disability includes insanity and other forms of mental incompetency. Hence, when the insured takes out such insurance, he is called upon to make provision, as he easily may and usually does, for a contingency that may render him unable, personally, to make proof. There are very potent reasons why this should be the rule. If the time for making proof be not confined to the period during which the policy is in force, then the beneficiary may wait until the insured has died and afterwards claim that the disability took place years before. The insurer would thus be put in a position where it would be almost impossible to make an investigation of the true facts of the situation. The practical effect would be that an insurance company would be compelled to carry every lapsed or forfeited policy as a contingent liability until after the death of the insured. All actuarial computations would thus be upset, and the amount of proper reserves could never be determined. We therefore must hold that the incapacity of the insured furnished no excuse for the failure to make due proof during the time that the policy was kept in force by the payment of premiums." Reynolds v. Travelers' Ins. Co., 28 P.(2d) 310, 314.

Similar holdings appear in Whiteside v. North American Accident Ins. Co. of Chicago, 200 N. Y. 320, 93 N. E. 948; 35 L. R. A. (N. S.)

620

696, and Northwestern Mut. Life Ins. Co. v. Dean, 43 Ga. App. 67, 157 S. E. 878.

It is apparent the great weight of authority supports our decision in the case of New England Mut. Life Ins. Co. v. Reynolds, 217 Ala. 307, 116 So. 151, 59 A. L. R. 1075. Indeed, no recent case is cited, nor do we find one holding otherwise, where the stipulation was in substance the same, a clear, unambiguous provision for the waiver of premiums on receiving proof of disability, before there was a lapse of the policy for nonpayment of premium.

Our second case is McGifford v. Protective Life Ins. Co., 227 Ala. 588, 151 So. 349. That case, as in the instant case, involved a claim for disability benefit, in lieu of the life benefit in a group policy. The stipulation for a disability benefit was in the same words as in the instant case. It was claimed, as here, that the life policy being in force at the time total permanent disability intervened, the requirement for proof of disability should be treated as a condition subsequent, to be made within a reasonable time after the disability, the capital loss insured against, had developed.

This court held the provision for alternate disability benefit was clear and unambiguous; that proof of disability while the life policy was still in force, that is to say, while employment continued, was made a condition precedent to the obligation to pay a disability benefit; that the contract must be given effect as written.

Manifestly, this McGifford Case is more directly in point in the instant case than the Reynolds Case, supra.

Appellant's criticism is directed mainly to the Reynolds Case, cited as authority in the McGifford Case.

The only difference between the McGifford Case and the instant case is that the disability in the McGifford Case arose from sickness of the insured employee, while here it arose from insanity.

We see no sufficient reason to depart from the McGifford Case, or the reasoning on which it was based. A mere reading of the stipulation shows there was no general obligation to pay a disability benefit, but to pay one in lieu of the life benefit in force at the time the claim for disability benefit was made and proof submitted. A policy in force for a like benefit, the fact of disability, and proof thereof are all elements or conditions on which the obligation to pay arises; may be regarded as considerations for the promise to pay a disability benefit.

■ True, this was a term policy of group insurance, to terminate with the employment, and total permanent disability to engage in a gainful occupation would include such employment. Hence, on the happening of such disability, the termination of employment would be expected to speedily follow.

The chief argument for appellant is that the very event which entitled the insured to make the required proof would likewise terminate the employment, and thereby terminate the life policy; and in case of disability due to insanity, that same disability would render the making of the proof impossible before the employment, and the life policy dependent upon it, terminated. Therefore, it is argued a due regard for fair dealing forbids any construction working such results.

The argument, superficially considered, seems plausible. But analyzed, it must be observed the fact that it is a group policy, one based on a low rate, such as deemed adequate for employees of that particular group, and limited to the term of employment, carries obvious reasons why stipulations should be made against contingent and unknown claims, arising long after the policy had terminated, with all the possibilities of disadvantage in making investigations, to say nothing of an open door to fraudulent claims.

■ Again, there is nothing in permanent total disability, within itself, to prevent making of proof when it occurs, as well as at some future time. If the disability, like permanent insanity, renders it impossible for the insured personally to make proof at the time, it would probably disable him to make such proof at a later time. Proof may be made by next friend at the time, the same as at some future time. The rule contended for would strike out the requirement of proof as plainly written into the contract, and write into it a provision excepting insanity and other like cases; so that, whenever it should suit the convenience of some one to become guardian, or administrator after death, the entire status of such insurance could be reopened.

■ Conditions precedent in the law of contracts, not impossible within themselves, are none the less binding, although by subsequent events performance may become impossible without fault of the promisor.

Mr. Williston states the rule thus: "So long as the basis of contractual obligation is the expressed intent of the parties, the boundaries of a promisor's liability must be fixed by the terms of his promise. Where, therefore, A promises B to do something if a cer-

tain contingency happens or if B renders some performance, there is no breach of promise, and, therefore, no liability unless that contingency happens or that performance is rendered, even though this result is due to no fault of the promisee and could not have been prevented by him. This principle finds its most frequent application in the law of insurance. Inability to comply with the conditions of a policy deprives the insured of all right upon the policy, or more strictly precludes him from acquiring any right to enforce the insurer's promise. And still less is hardship an excuse. Thus where the payment of a premium by a certain day is made an express condition of the continuance of insurance, illness or insanity of the insured will not excuse his delay in payment." Williston on Contracts, vol. II, § 808, pp. 1549, 1550.

■ By parity of reasoning, if proof of disability, while the policy is yet in force, is, by plain and unambiguous terms, made one of the things to be performed before the obligation to pay a disability benefit arises, no subsequent insanity or other condition making it impossible to comply will excuse performance. To do so would be to write a new contract.

The case of Pfeiffer, Adm'r, etc., v. Missouri State Life Insurance Company, 174 Ark. 783, 297 S. W. 847, 54 A. L. R. 601, is not in point. The disability provision in the life policy there involved read as follows:

" 'The company will pay to the insured a life income of ten dollars each month for each $1,000 of the face amount hereof if the said insured shall become totally and permanently disabled, as hereinafter defined, before attaining age sixty. The first payment of said income shall be made six months after receipt by the company of due proof of total and permanent disability, and subsequent payments shall be made monthly thereafter as long as the insured lives and suffers such disability, and shall be in addition to all other benefits provided by this policy.' " 174 Ark. 785, 297 S. W. 847, 848, 54 A. L. R. 602.

The opinion by Chief Justice Hart begins by clearly recognizing the principles applicable to conditions precedent in insurance policies. The quoted clause is construed to import a direct obligation to pay such benefit if the insured shall become so disabled, and the clause relating to proofs as a condition subsequent, fixing the date of maturity, etc. In this regard, the provision was like unto those in ordinary accident and health poli-

cies. See, also, our case, Prudential Ins. Co. of America v. Gray, 159 So. 265.

The case is authority for the proposition that such condition subsequent will not defeat the obligation after the capital loss insured against has occurred, if insanity renders the making of proof by the insured impossible.

Other cases relied upon by appellant have been examined. They either relate to conditions subsequent, some of them in fire policies, or announce principles which we consider at variance with the great weight of authority, as well as our own cases discussed in this opinion.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.