25876. MAVRIKIS *v.* NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY.

DECIDED FEBRUARY 13, 1937.

*Gazan, Walsh & Bernstein,* for plaintiff.
*Oliver & Oliver,* for defendant.

SUTTON, J. Mrs. Helen Mavrikis, as beneficiary, brought suit

on a life-insurance policy for $2500 issued by the defendant company to Charles Peter Mavrikis on March 3, 1926, the same being in lieu of another policy, and was to run from August 1, 1925, the premiums being payable semi-annually. The contract of insurance contained the following stipulations: "Par. 11. Cash Loans. At any time after premiums have been paid hereon for three full years, the company will lend to the insured within sixty days after written request, upon proper assignment of this policy to the company, and on the sole security thereof, an amount not exceeding the loan value of this policy at the end of the then current policy year as provided in the table of values (p. 14) herein contained, less any indebtedness to the company hereon or secured hereby and any unpaid balance of the premium for the said policy year. Such loans shall bear interest at the rate of six per cent. per annum, payable in advance to the next anniversary of the policy, with the privilege of partial or complete prepayment at any time with refund of unearned interest, if any. If interest is not paid when due, it shall be added to the principal and bear interest at the same rate. Failure to repay such loan or interest thereon shall not avoid this policy unless and until the total indebtedness thereon or secured thereby shall equal the loan value, nor until thirty-one days after notice shall have been mailed to the last known address of the insured and any assignee of record at the home office; but failure to repay such loan after the total indebtedness, as aforesaid, shall equal said loan value, and after giving such notice, shall render this policy void. Par. 13. Nonforfeiture provisions. After premiums have been paid hereon for three full years, in case of default in the payment of any premium or instalment thereof at the expiration of period of grace, this policy will automatically be commutated to unconditional nonforfeitable paid-up life insurance of an amount computed according to the table of paid-up values in paragraph 14 hereof. Par. 14. Table of values. (Referred to in paragraphs 10, 11, and 13.) The values in the following table are for full-paid policy years, subject to any indebtedness and will be adjusted proportionately for additional instalments of premiums beyond the full-paid policy years. The insurance benefits provided in paragraph 13 will be such as the cash surrender value at time of default will purchase, applied as a net single premium at the attained age of

the insured, according to the American experience table of mortality, with interest at the rate of three and one half per cent. per annum, which table of mortality and interest assumption is the basis for computing the reserves on this policy." Under paragraph 14 the following figures, among others, appear: "After policy has been in force for

|  | For each $500 of face amount. | |
| Years. | Cash or loan value. | Paid-up insurance. |
| 8 | $77 | $196 |
| 9 | $90 | $225 |
| 10 | $103 | $251" |

A total and permanent disability contract was issued in connection with the policy here sued on, containing the following provisions: "In consideration of the continuance of policy No. 71303 on the life of Charles Peter Mavrikis, the company agrees to pay for the insured the premiums thereafter becoming due thereon, if the insured, before attaining the age of sixty years, after paying at least one full annual premium and before default in payment of any subsequent premium, shall furnish satisfactory proof to the company at its home office, accepted by it in writing, that he has become wholly and permanently disabled by bodily injury or disease, so that he is and will be for life continuously and wholly prevented thereby from performing any work or transacting any business, for compensation or profit, or from following any gainful occupation. Premiums so paid by the company shall continue said policy in force, and all values therein provided shall increase, in the same manner and to the same extent as if paid by the insured, shall constitute no lien or indebtedness against the policy, and shall not be deductible from any settlement thereunder. . . Provided: That notwithstanding proof of disability may have been accepted by the company as satisfactory, the insured shall at any time, but not oftener than once a year, on demand, furnish the company satisfactory proof, including physical examination by a physician of the company's selection, if required, of the continuance of such disability; and if the insured shall fail to furnish satisfactory proof, or if it shall appear to the company that the insured is able to perform any work, transact any business or to follow any occupation whatsoever for compensation, gain or profit, the company's obligation to pay such premiums shall cease and all

premiums thereafter falling due must be paid by the insured in conformity with the terms of said policy. This supplemental contract is attached to and forms a part of the policy first herein described and is subject to all its terms and provisions. It shall terminate upon the termination, forfeiture, cancellation or exchange of said policy, and the company shall not be obligated to issue any similar contract in connection with any substituted policy which may thereafter be issued in exchange therefor. . . ."

The petition was in two counts. In the first count it was alleged that the premium payable on said policy on August 1, 1934, was paid, and that the deceased had failed to pay the quarterly premium that was due on November 1, 1934, either at that time or within the period of grace, which expired on December 1, 1934; that in August, 1934, the insured had not attained the age of sixty years, and had become wholly and permanently disabled by bodily disease so that he became for life continuously and wholly prevented from performing any work or transacting any business for compensation or profit, or from following any gainful occupation, and that, in addition to the entire and permanent disablement by bodily disease, he had also become incapacitated by reason of a brain disease so that he became incompetent and it was impossible for him to furnish proof to the defendant at its home office of his having become wholly and permanently disabled by such bodily disease; that neither the plaintiff nor any member of her family, had any knowledge of the existence of the total and permanent disability rider to said policy until after the death of the insured; that the insured never recovered from his physical or his mental disability, and that he died on January 9, 1936; that due proof of death has been filed with the defendant, and that it failed and refused to pay the amount of the policy; that by reason of the mental disease with which the insured became afflicted prior to his default in the payment of said premium, he was legally excused and relieved from the requirement of such total and permanent disability rider that he should furnish proof to the company of his disablement; that except with regard to furnishing proof to the company, as provided for in said disability rider, all provisions of said policy and said rider were fulfilled by the insured, and that his mental disability excused him legally from furnishing said proof, and that under the provisions of said rider

he became entitled to have said defendant pay all premiums thereafter becoming due thereon, which would have kept the policy in good standing until the time of his death. The plaintiff in this count sues for $2500, the amount of the policy.

In the second count the plaintiff seeks to recover less than the face value of the policy under the non-forfeiture provisions thereof, as above set forth. It is alleged that the policy ran from August 1, 1925, to December 1, 1934, before the default finally occurred, a period of from nine to ten years; that under the table of values above set forth the cash or loan value at nine years would be $90 for each $500 of the face amount of the policy, and for ten years the sum of $103 for each $500 of the face amount of the policy; the policy being for $2500, the cash or loan value for nine years would be $450, and for .ten years it would be $515; that according to this same table the paid-up insurance for nine years would be $225 for each $500, or $1125, and for ten years $251 for each $500 of insurance, or $1255; that the insured had borrowed $399.11 on this policy, and a judgment for $855 was prayed for under the second count. In this count it was alleged that the defendant had tendered and offered to pay the plaintiff $152, this being the amount it claimed that it owed the plaintiff, as beneficiary, under this policy. The defendant filed general and special demurrers to both counts of the petition. The court sustained the general demurrer to each count, and the plaintiff excepted.

■ The court properly sustained the general demurrer to count one of the plaintiff's petition. This feature of the case is controlled by *Northwestern Mutual Life Ins. Co.* v. *Dean*, 43 *Ga. App.* 67 (157 S. E. 878), *Dean* v. *Northwestern Mutual Life Ins. Co.*, 175 *Ga.* 321 (165 S. E. 235), and by *Smith* v. *Travelers Insurance Co.* 177 *Ga.* 589 (171 S. E. 121).

■ The policy contained provisions for its commutation into fully-paid, non-forfeitable life insurance in accordance with the provisions and stipulations contained in paragraphs 11, 13, and 14 thereof, and the controversy between the parties hereto grows out of the different constructions they place on these provisions of the contract which are set out in the foregoing statement of facts. Paragraph 13 provides, in part: "After premiums have been paid hereon for three full years, in case of default in the payment of any premium or instalment thereof at the expiration of

period of grace, this policy will automatically be commuted to unconditional non-forfeitable paid-up life insurance of an amount computed according to the table of paid-up values in paragraph 14 hereof." Paragraph 14 provides: "The values in the following table are for full-paid policy years, subject to any indebtedness and will be adjusted proportionately for additional instalments of premiums beyond the full-paid policy years. The insurance benefits provided in paragraph 13 will be such as the cash surrender value at time of default will purchase, applied as a net single premium at the attained age of the insured, according to the American experience table of mortality, with interest at the rate of three and one half per cent. per annum, which table of mortality and interest assumption is the basis for computing the reserves on this policy." It will be noted that the values set out in the table in this paragraph are "subject to any indebtedness," and that "the insurance benefits provided in paragraph 13 will be such as the cash surrender value at time of default will purchase. . ." Paragraph 11 provides that after premiums have been paid for as much as three years, the company will lend to the insured an amount not exceeding the loan value as provided by table of values in paragraph 14, less any indebtedness of the insured to the company. The cash or loan value of the policy at the end of the ninth year, according to the table of values in paragraph 14, is $90 for each $500 of insurance, or $450, as the face of the present policy is $2500; and the paid-up insurance, according to this table, is $225 for each $500, or $1125. It is alleged in the petition that the insured had borrowed $399.11 from the company. The plaintiff contends that this indebtedness should not be deducted from the cash or loan value at the time of the default, but from the amount of paid-up insurance after applying the full cash-surrender or loan value (without regard to indebtedness) as a net premium to acquire the paid-up insurance. The defendant contends that the alleged indebtedness should be deducted from the cash or loan value, and it is alleged by the plaintiff that the defendant had tendered the amount due, according to its contention. The cash or loan value of the policy is built up by the payment of premiums, and the cash-surrender value would necessarily be the loan value, less any indebtedness. From the terms of the policy, as stipulated in the three paragraphs just referred to, we think it clear that the

amount of paid-up insurance available to the insured on default in the payment of premiums, after premiums had been paid for three years, would be such as the cash-surrender value would purchase when applied as a net single premium at the attained age of the insured, and that the cash-surrender value would be the cash or loan value of the policy, less any indebtedness thereon. Therefore, the plaintiff was entitled to recover under count two only the amount tendered by the defendant, and the court correctly so held on the ruling on the demurrer to this count.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*