## NEW YORK LIFE INS. CO. v. FEDERAL NAT. BANK OF SHAWNEE, OKL.

### No. 3147.

Circuit Court of Appeals, Tenth Circuit.

Oct. 29, 1945.

Rehearing Denied Dec. 6, 1945.

V. P. Crowe, of Oklahoma City, Okl. (Embry, Johnson, Crowe, Tolbert & Shelton, of Oklahoma City, Okl., and Ferdinand H. Pease, of New York City, on the brief), for appellant.

John L. Goode, of Shawnee, Okl. (Mark Goode and Goode & Goode, all of Shawnee, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

The New York Life Insurance Company [1] issued its fifteen-year endowment insurance policy on the life of Allen J. Cammack in the sum of Ten Thousand Dollars. The policy was made payable to him if living on January 10, 1943, or to his wife, Minnie O. Cammack, if he died prior to that date. The policy gave Cammack the right to change the beneficiary and also the right to assign the policy. He did not change the beneficiary, but on July 11, 1940, he assigned the policy to Benjamin F. Fields by written assignment, which was in due form and regular in all respects. Minnie O. Cammack, the beneficiary, joined in this assignment. The assignment contained the following provision: "Absolute—This assignment gives the assignee the right to borrow against this policy, use the dividends, or surrender same at any time in accordance with the rules of the Company, without the consent of the insured." Fields immediately borrowed the full loan value of the policy, and after the death of Cammack in January, 1941, made proof of loss and thereupon received the balance due on the policy from the Company. Thereafter, the proper county court in Oklahoma, in a proceeding pending therein, found that Minnie O. Cammack "is an incompetent person and is mentally incompetent to manage her property," and appointed the Federal National Bank of Shawnee,[2] Oklahoma, guardian of her estate.

The Bank, as her guardian, brought this action against the Company to recover the face amount of the policy. The ground on which recovery was sought was that Cammack was completely without mental capacity at the time he executed this assignment, and that the assignment was therefore void and conveyed nothing to Fields, the assignee. The cause was tried to the court without a jury. Judgment was entered for the plaintiff, and the Company has appealed. A number of assignments of error are urged for reversal. These will be noted separately hereafter.

The Company defended on the ground that Cammack was mentally competent at the time he assigned the policy, and that the beneficiary, Minnie O. Cammack, also was mentally competent at the time she joined in the assignment and was estopped to claim the benefits of the policy.

The trial court found that on the date of the assignment Cammack was wholly without mental capacity or understanding, and that while Minnie O. Cammack was incompetent to the extent that she could not manage or care for her property unassisted, she was, however, not wholly without understanding. The court concluded as a matter of law that the assignment of the policy by Cammack was void by reason of his lack of mental capacity; that Minnie O. Cammack as beneficiary had no interest in the policy which she lawfully could assign, and that the Company acquired no right by reason of her joinder in the assignment; that no estoppel had arisen against her, and that the rule of law that where one of two innocent persons must suffer loss by the acts of a third party, the one who enables the third party to occasion the loss must suffer, was not applicable under the evidence in the case.

The court's finding as to the mental capacity of both Cammack and his wife is challenged. It was one of the issues in the trial. Not much needs to be said on this point. It is sufficient to say that there is substantial evidence in the record which supports the findings of the trial court, and that its findings as to the mental capacity of each of these parties are therefore binding upon this court.

The court concluded as a matter of law that Minnie O. Cammack had no interest in the policy at the time she joined in the assignment, which she could assign, and was therefore not estopped by joining therein. Oklahoma apparently has never passed upon the right of a beneficiary to assign an expectancy under an insurance policy. In our opinion the decision in this case does not turn upon her right to make an effective assignment of her expectancy, or upon whether her joinder in the assignment in any event estopped her from maintaining this action, and we therefore do not pass upon this question.

The weight of authority is to the effect that if a depositor in a bank, after he opens an account, becomes insane and thereafter draws a check, or if he draws a check while sane and becomes insane before it is paid, the bank is protected in either case if it pays the check in good faith and in ignorance of the depositor's insanity. These cases hold that unless there are present facts which put the bank

---

[1] Herein called the Company.

[2] Herein called the Bank.

upon inquiry, it is under no obligation to investigate the drawer's mental status, and that advanced age imposes no duty upon the bank to investigate his mental capacity.[3]

The relationship between a policy-holder and his company is in many respects analogous to that between a depositor and the bank. When a policy of insurance is issued, the company becomes indebted to the insured for the amount of the policy. In the contract the company agrees to pay the amount of the policy to the insured or to his order. A life insurance contract differs from a contract resulting from a deposit in a bank in that the policy designates the persons to whom payment is directed. But it also gives the insured the right to give further or different orders for the payment of the amount due by giving the insured the right to change the beneficiary, and the further right to assign the policy.

No case has been cited, and our search has failed to reveal one, which has compelled an insurance company to pay a policy a second time when in good faith it has paid the amount of the policy to a new beneficiary or to an assignee, on the ground that the assignment or the change in beneficiary was void because of lack of mental capacity of the insured at the time the change was made, and that is so even though the original beneficiary did not join in the application for change of beneficiary or in the application for the assignment of the policy. The cases upon which the appellee relies to sustain its contention in this respect are not in point. An examination of these cases reveals that they were either actions by the original beneficiary against the new beneficiary to cancel the void change, or actions in behalf of the incompetent insured against the assignee to cancel the void assignment. In none of them had the company paid the amount due under the policy, and none of them was brought against the company.

A number of cases have held that payment in good faith of the full amount of a life insurance policy to the last regularly designated beneficiary, without knowledge of the lack of mental capacity to make the designation under which payment was made, discharged the insurer's obligation under the policy, and that no duty rested upon the company to make inquiry into the mental status of the insured making application for a change of beneficiary. In Bosworth v. Wolfe, 146 Wash. 615, 264 P. 413, 56 A.L.R. 1117, the insured, aged eighty-eight years, while wholly incompetent mentally, changed the beneficiary. The Washington Supreme Court held that there was no duty upon the company to make inquiry into the mental capacity of the insured. In Metropolitan Life Ins. Co. v. Bramlett, 224 Ala. 473, 140 So. 752, an insane person changed the beneficiary in his policy. After his death, the original beneficiary sought to compel the company to pay the policy a second time, after it had paid the proceeds to the new beneficiary without knowledge of the insured's mental condition. The Alabama Supreme Court held that while the change of beneficiary was void, the company, having in good faith and without notice paid the proceeds to the new beneficiary, could not be compelled to pay a second time. In New England Mutual Life Ins. Co. v. Reynolds, 217 Ala. 307, 116 So. 151, 59 A.L.R. 1075, the Alabama Supreme Court held that where the company paid cash on a policy loan on the application of an insane insured without notice of his insanity, it could not be compelled to pay a second time. In Nutter v. Des Moines Life Ins. Co., 156 Iowa 539, 136 N.W. 891, an insane insured borrowed on a policy. Thereafter, while still insane, he surrendered the policy. After his death the beneficiary instituted an action to recover the full amount of the policy. The Iowa Supreme Court held that where the parties could be placed in status quo, the contract of an insane person would be set aside, notwithstanding that the other party had no knowledge of insanity. The court set aside the contract of surrender, but permitted recovery only of the difference between the face of the policy and the amount the insane insured had borrowed. In State Life Insurance Company v. Coffrini, the federal trial court gave the following instruction: "The law of the case is not difficult. As I ruled at the trial, if the insured was insane when a change of beneficiary was made by him, and the insurer, without notice of such insanity, acted in good faith upon the paper as genuine, indorsed the policy accordingly, and on his

[3] Brady on Bank Checks, § 205; Riley v. Albany Savings Bank, 36 Hun, N.Y., 513; Reed v. Mattapan Deposit & Trust Co., 198 Mass. 306, 84 N.E. 469; Leighton v. Haverhill Savings Bank, 227 Mass. 67, 116 N.E. 414; Poole v. Newark Trust Co., 1 Terry, Del., 163, 8 A.2d 10.

death, still in ignorance of his insanity, paid the money in good faith to the beneficiary as changed, the company would have been protected." On appeal, the Third Circuit approved this statement of the law. See 285 F. 560.

The underlying principle of the cases which refuse to impose a second liability upon a bank when it has paid the check of an insane depositor is that the contract between the parties was made at the time of the deposit when both parties were sui juris, and that the subsequent act of drawing a check against the deposit at a time when the depositor was insane and its payment by the bank did not constitute a new agreement, but was only the performance of an obligation under the original contract whereby the bank discharged its obligation under the contract to its depositor, and that since there was no obligation on the part of the bank to inquire into the mental capacity of the depositor at a time when he drew a check against the account, the bank could not be compelled to pay the check a second time when it paid the check in the ordinary course of business and without knowledge of his lack of mental capacity.

■ As pointed out, there is a close analogy between the relation of a bank and its depositor and that of an insurance company and its insured. By the contract of insurance, a company becomes indebted to the insured for the amount of the policy. It agrees to pay this indebtedness to the designated beneficiary. It further agrees that the insured may change the beneficiary or assign the policy, and that the company will honor an application therefor which is presented in due course and which is regular in all respects. When Cammack presented this application for the assignment of the policy, which was regular in all respects, he was exercising a right under a valid contract made at a time when he was sui juris, and it became the duty of the Company to honor the application and make an assignment of the policy. Granting the application for the assignment of the policy did not result in the making of a new contract. It merely constituted performance on the part of the Company of its contract with the insured. Furthermore, its contract with Cammack required it to pay the proceeds of the policy to the assignee when proof of the insured's death was received by it.

■ Of course, if the Company knew when it received the application for the assignment of the policy that the insured was insane, or was in possession of facts which put it upon inquiry as to his mental condition, or if at the time the assignee made proof of claim it was in possession of such facts, it could not lawfully make the change or pay the proceeds to the assignee. While the court in its opinion, filed in the case and made a part of the record on appeal, states that under the circumstances of the case the Company was duty bound to make inquiry, it did not make a finding of fact that the Company knew or had knowledge which put it upon inquiry as to the insured's mental condition; neither would such a finding be justified by the record.

■ When the Company received this application for the assignment of the policy, it was under no duty to inquire into the mental status of the insured. Neither was it in possession of facts at the time proof of claim was filed with it which would put it upon such inquiry. The application for the assignment and the proof of claim were regular in all respects and were handled by the Company in the regular and ordinary course of business. There is no suspicion in the record that the Company dealt otherwise than honestly with the insured, and, in the language of the Massachusetts Supreme Court in Reed v. Mattapan Deposit & Trust Co., supra, there is no sound legal or moral reason why the Company should be compelled to pay the amount of this policy a second time.

■ There is yet another reason why the Bank may not prevail. That part of the policy which gave the insured the right to assign contains this provision: "The company assumes no responsibility for the validity of any assignment." This provision was a part of the contract made at a time when the parties were competent to contract, and must be given effect. There is no ambiguity or uncertainty as to the meaning of this provision. It can only mean that the Company shall not become liable by virtue of the assignment which for any reason was invalid. There was a good reason for the inclusion of such a provision. The Company had a large number of policy-holders. Many requests for the assignment of policies would be received. The Company no doubt realized

that fraud, duress or undue influence might be practiced in many instances which would go to the validity of the assignment, or that assignments might be invalid for many other reasons, including impaired mental capacity or even lack of mental capacity to make the assignment. If the Company was to be charged with liability if an assignment was invalid for any of these reasons, it would of necessity be compelled to deny the right to assign, or in each instance would be compelled to carefully investigate the application before it was granted. This would place an impossible burden upon the Company. It was for these reasons that the Company in substance said to the insured: "We will give you the right to assign, but we shall not be liable if for any reason the assignment is invalid." This provision would not, of course, protect the Company in case of an irregular assignment because that would put it upon notice, or in cases in which it had knowledge of the mental condition of the insured, or in cases in which it had knowledge of facts which should put it upon inquiry. But this is not such a case.

For these reasons, the judgment of the trial court is reversed and the cause is remanded, with directions to enter judgment in conformity with the views expressed herein.