No. 30,092.

BUELA L. SMITH, *Appellant*, v. THE MISSOURI STATE LIFE INSURANCE COMPANY, *Appellee*.

(7 P. 2d 65.)

*C. H. Pugh, Lloyd F. Cooper, H. W. Hart, Glenn Porter, Enos E. Hook, Edward H. Jamison* and *Getto McDonald*, all of Wichita, for the appellant.

*Arnold C. Todd, James G. Norton, Carl O. Bauman* and *Julian E. Ralston*, all of Wichita, for the appellee; *J. R. Burcham*, of St. Louis, Mo., of counsel.

The opinion of the court was delivered by

SLOAN, J.: This was an action to recover on a life insurance policy. The court sustained a demurrer to the plaintiff's evidence, from which order the plaintiff appeals.

The policy was dated August 26, 1919, and insured the life of Joe L. Smith in the amount of $2,500, in which policy the plaintiff was the beneficiary and the wife of the insured. The annual premiums were due and payable on the 26th of August of each year. All premiums to and including the premium maturing August 26, 1927, were paid. In 1926 the insured exercised his right under the terms of the policy and a loan was made thereon. In 1927, at the maturity of the loan and the premium, a new loan was made which included the entire loan value of the policy, and the insured was required to pay some cash in order to pay the 1927 premium. The premium maturing August 26, 1928, was not paid. The reserve value of the policy having been exhausted through the loan, there was no extended insurance other than the thirty-day grace period provided by law. The policy lapsed September 25, 1928. Among other things the policy contained the following clause:

"After one full annual premium shall have been paid and before default in payment of any subsequent premium, if the insured, prior to attaining age sixty, shall furnish evidence satisfactory to the company, that he has been

wholly disabled from bodily injury or disease and that he will be permanently, continuously and wholly prevented thereby for life from pursuing any and every gainful occupation, the company, during the continuance of such disability, will waive payment of any premium payable under this policy as it becomes due . . ."

It is alleged in the petition that on or about January 1, 1928, the insured became wholly disabled by reason of insanity to such an extent that he was permanently, continuously and wholly prevented thereby from pursuing any and every gainful occupation; that on or about the 26th day of May, 1929, the insured was adjudged insane by the probate court of Sedgwick county, Kansas, and died on the 16th day of August, 1929.

The evidence on this question is to the effect that the insured was an oil-well driller, and in 1925 and 1926 he drilled wells for several of the large operators. The beneficiary testified that she first noticed there was something wrong with the insured in the summer of 1927. They were living at that time in El Dorado and their next-door neighbor shot his wife and himself, and insured was called to assist in carrying out the bodies; that after this occurrence he lowered the shades on that side of the house and would never afterwards have them up, and if they were up during the day he would become angry; that about two weeks after the tragedy he tried to chloroform her; that during the summer of 1928 he appeared to be unable to control himself; that he kicked and choked her, pulled her hair and threw things at her; that she had to watch him like a child; that he quit driving the automobile and was on one occasion unable to count money. "Between the time we moved to Wichita and August, 1928, Mr. Smith's physical condition changed a little; some days he looked terrible and then again he would look like himself. Sometimes he could tie his tie and fix himself all right, other times he could not. . . . Mr. Smith didn't work very much after the summer of 1927; he worked a while for the Southbrook Oil Company; he attempted during all the time to find employment, but he had had bad luck in getting drilling contracts and finding work. He worked whenever he had an opportunity and tried to get work or drilling contracts up to the time he went to Larned. He worked for the Southbrook Oil Company on the well known as the Joseph Bros. well, near Potwin, Kan., on or about the 18th day of July, 1928, up to the 21st day of July, and received his pay. He also received a salary check on August 10, 1928. If the Southbrook Oil

Company's records show that he worked off and on during the month of September, 1928, and the month of October, 1928, and received pay for the entire time that he worked, then I would say that their records are correct and that he did work and receive pay during that time. I know, as a matter of fact, that he did work and receive pay during a part of that time."

The beneficiary further testified that the insured had a policy with another company; that he paid the premium which was due in March, 1928, and on November 17, 1928, he assigned this policy to secure his indebtedness. On September 22, 1927, the insured wrote the company concerning his premium, and on February 22, 1928, he wrote the company asking that his son, Joe E. Smith, be named as contingent beneficiary. On February 28, 1928, a formal request was made by the insured to change the beneficiary from Buela L. Smith to Buela L. Smith, wife, if surviving, otherwise to Joe E. Smith, son. This request was executed before a notary public. On August 20, 1928, the insured addressed a letter to the company asking that the grace period be extended. The insured wrote the company under date of October 25, 1928, stating that he had an interest in a gas lease in Oklahoma from which he expected to receive some money, and asked if some arrangements could not be made by which he could keep his policy in force. On November 9, 1928, he wrote the company inclosing two promissory notes to be used in extending the policy. On January 23, 1929, he again wrote the company concerning the policy, stating that he had a prospective buyer for a lease and hoped to be able to raise the money to keep the policy in force. The witness further testified:

"I do not doubt that Mr. Smith received defendant's exhibit '26' which is dated August 26, 1928, from the company and which purports to be a notice of the date when our loan on this policy should be paid, and if not paid within thirty days from that date would be forfeited, but I don't positively remember at this time. I don't remember positively, but I think Mr. Smith probably received defendant's exhibit '28,' which is a notice from the company to pay the premium on the policy for the year 1928. I wrote the letter marked 'Defendant's Exhibit 29' and Mr. Smith signed it and I then caused it to be sent to the Missouri State Life Insurance Company. I wrote the letter marked 'Defendant's Exhibit 30,' Mr. Smith signed it and I mailed it to the Missouri State Life Insurance Company. I wrote the letter, marked 'Defendant's Exhibit 31,' Mr. Smith signed it, and I caused it to be mailed.

"After August 26, 1928, the Missouri State Life Insurance Company answered all our letters so far as I know; while I don't remember, I don't deny that the company offered suggestions and ways to reinstate the policy."

Thirteen lay witnesses testified that they were acquainted with the insured during 1927 and 1928. Some of these witnesses had worked with the insured, others had visited with him and had observed his conduct, and they expressed opinions to the effect that his trouble was mental; that he was incapable of conducting his own affairs, and was insane.

The manager of the Southbrook Oil Company testified:

"I recall that Joe L. Smith went to work for the company July 18, 1928. I know that he also worked on August 10, 1928, September 19th, 20th, 21st, 22d, 23d, 27th, 29th and 30th; nine days I believe in September. He also worked on October 1, 1928, and on November 11th, 20th, 21st, 22d, 23d and 24th, 1928, approximately eight days in November. He worked as a tool dresser and the company paid him for all of his work."

Doctor Davis and Doctor Cooper made an examination of the insured the date he was adjudged insane. They testified that his condition at that time was paresis; that his speech was defective; that he had a slow stuttering, stammering speech with difficulty of articulation; that he was practically oblivious to his surroundings and did not understand the meaning of the procedure; that the duration of the mental condition had existed from a year and a half to three years; that during the year 1928 he was suffering from paresis and unsound mind.

At the close of the plaintiff's evidence the defendant demurred, and the trial court ruled as follows:

"Let the record show that the court is of the opinion that the defendant's demurrer to the plaintiff's evidence should be sustained, first, on the ground that it fails to show notice to the defendant while the policy was in force of the alleged disability of the insured, and, second, for the reason that the evidence affirmatively shows that insured was not permanently and wholly disabled from engaging in any useful or gainful occupation before the policy lapsed for nonpayment of premium. The demurrer is sustained."

The question for the consideration of this court is whether the trial court properly construed the clause in the policy which provides for waiver of premium under certain conditions. The law is settled that a policy of insurance which is prepared by the insurer will, if there is any ambiguity in the terms of the contract, be solved and the construction adopted in favor of the insured. (*Insurance Co. v. Milling Co.*, 69 Kan. 114, 76 Pac. 423; *Fire Association v. Taylor*, 76 Kan. 392, 91 Pac. 1070; *Evans v. Accident Association*, 102 Kan. 556, 171 Pac. 643; *Hoskins v. North American Accident Ins. Co.*, 123 Kan. 731, 256 Pac. 981.) This, however, does not mean

that the court will by construction alone make a new contract for the parties or disregard the plain terms and conditions in the policy.

The sanctity of contracts is vital to our business and economic institutions, and where the parties are contracting within the law, the terms of which are their own choosing, it is the duty of the court to enforce the contract. The policy in question contains the usual provisions for the automatic premium loan, automatic extended insurance, paid-up insurance and other nonforfeiture and loan provisions. It is commonly recognized as a liberal agreement in so far as the insured is concerned, and one that tends to encourage thrift and in some measure, at least, provides for financial independence for himself in the event of total disability, and protection for his family in the event of death. The contract provides that upon default in the payment of any premium the policy shall cease and determine. The courts, without hesitancy, enforce this provision of the insurance contract.

It is settled law that insanity or incapacitating sickness of the insured, because of which he fails to pay when due a premium or assessment on an insurance policy, will not excuse such failure so as to prevent a forfeiture where the policy provides that the failure to pay premium terminates the contract. The theory of the law is that where a person by an express contract obligates himself absolutely to do an act not impossible or unlawful at the time, neither inevitable accident nor any other unforeseen contingency will excuse him. (See extended note 15 A. L. R. 318; also, 3 Couch on Insurance 2232, and cases there cited.)

The clause under consideration is a part of the policy and must be construed in the light of the other provisions of the policy. From this we glean that the intent of the provision was to provide an additional way in which the premium might be paid, or the insured excused from the payment of premium. The plain language of the policy is: "After one full annual premium shall have been paid and before default in payment of any subsequent premium, if the insured . . . shall furnish evidence satisfactory to the company that he has been wholly disabled . . . the company, during the continuance of such disability, will waive payment of any premium payable under this policy as it becomes due . . ." There is no ambiguity in the language used. The fact of disability must exist, and notice thereof must be conveyed to the company before default is made in the payment of the premium. In other words,

under the terms of this policy, there are several ways in which the premium may be accounted for: First, payment in cash. Second, through the operation of the automatic premium loan, if the loan value is sufficient to pay the premium due. Third, if the insured is wholly disabled and proof of such disability is furnished the company, the premium is waived. The fact of disability, plus the act of notice, equals payment, which can only be made within the time stated in the policy.

Appellants cite, as authority supporting their contention that notice need not be given before default, a line of accident insurance cases wherein the insured is required to give notice of the accident or disability within a stipulated time after the occurrence thereof, and wherein it is held that the insured is excused from giving such notice if he is prevented from so doing by reason of mental incapacity resulting from the accident or disability. The authorities supporting this question are found in an extended note in 54 A. L. R. 611.

In the case of *New England Mutual Life Ins. Co. v. Reynolds,* 217 Ala. 307, the court had before it a disability clause substantially the same as in the policy under consideration, and the court, after referring to the cases above cited, said:

"We think there is a manifest distinction between that class of cases and this. In such accident cases the provision is in the nature of a condition subsequent wherein the insurer defends against a liability already accrued. In this case the beneficiary relies upon the waiver clause to keep the policy alive, to excuse the payment of premiums. The disability set up in accident cases is usually the result of the injury insured against. Here there is no insurance against disability, physical or mental." (p. 310.)

This is but an application of the well-recognized principle that inevitable accident or unforeseen contingencies may be sufficient to excuse the performance of a condition subsequent. Courts of equity have, however, invariably refused, under like circumstances, to excuse the performance of a condition precedent. (*Pfeiffer v. Missouri State Life Ins. Co.,* 174 Ark. 783.) Where the waiver of premium is based not only on a disability but also on proof of such disability, both conditions must be met. The insurance companies do not appear to have adopted a uniform disability clause, and consequently each case must stand on its own bottom and be controlled by the construction of the particular contract under consideration. An examination of the adjudicated cases discloses that the courts

have reached different conclusions from substantially the same language.

In the case of *Swann v. Atlantic Life Ins. Co.*, (Va.) 159 S. E. 192, 195, the supreme court of Virginia had before it for consideration a policy very similar to the policy in the instant case. The court reached the conclusion that the failure to give notice while the policy was in force was not necessary where the insured is insane. The court said:

"The insured could not present proofs before his disability, and he certainly could not present proofs after he became mentally and physically incapable of doing so. It would be unreasonable to say that he should present proofs to the company if he were insane or unconscious. Such a construction of the policy would render it of no value to the insured in such a case, although he may have been influenced thereby to purchase the insurance, and has paid for the right to have the premiums waived."

The following cases, in construing similar policies, have reached the same conclusion: *Levan v. Metropolitan Life Ins. Co.*, 138 So. Car. 253; *Marti v. Midwest Life Ins. Co.*, 108 Neb. 845; *Minnesota Mut. Life Ins. Co. v. Marshall*, 29 F. 2d 977; *Pfeiffer v. Missouri State Life Ins. Co.*, supra.

It will be noted, however, in each of these cases that the court has found the contract ambiguous, and, following the well-recognized rule of construction, adopted the construction most favorable to the insured.

On the other hand, there are substantial authorities in other jurisdictions supporting the contention of the appellee in which the disability clause and the facts are similar to the case here under consideration.

In the case of *Hanson v. Northwestern Mutual Life Ins. Co.*, 229 Ill. App. 15, the policy considered by the court was as follows:

"If, after payment of regular premium for one full year and during the continuance of this agreement, the insured shall, . . . furnish proof satisfactory to the company that he has become . . . disabled . . . the company on receipt of such proof will . . . waive the payment of the premiums . . ." (pp. 19, 20.)

The premium was due March 5, 1921. The last day for the payment of the premium to avoid a forfeiture was April 5, 1921. On April 3 the insured was fatally injured in an automobile accident, and died on April 8 following. From the time of the injury to his death he was physically and mentally disabled. The court held

that it was necessary that the proof be furnished while the policy was in force to entitle the insured to the waiver of premium.

In the case of *Northwestern Mutual Life Ins. Co. v. Dean*, 43 Ga. App. 67, the court said:

"Under the stipulation in the contract of insurance sued on, to the effect that if 'the insured shall . . . furnish proof satisfactory to the company that he has become totally and permanently disabled from any cause, . . . the company, on receipt of such proof, will by suitable indorsement of this agreement waive payment of the premiums thereafter falling due under said policy and this agreement during the continuance of such disability,' such proof was a condition precedent to such waiver, and the fact that because of his insanity the insured could not make proof, and that no one else could make such proof for him for the reason that no one knew that he had such policy of insurance, did not have the effect of keeping the policy of insurance in force until his death more than a year from the time of such total disability. Therefore the petition did not set out a good cause of action." (Syl.)

In the case of *Peoria Life Ins. Co. v. Bergholm*, 50 F. 2d 67, the court had before it a policy containing the following:

"Upon receipt by the company of satisfactory proof that the insured is totally and permanently disabled as hereinafter defined the company will—

"1. Pay for the insured all premiums becoming due hereon after the receipt of such proof . . ."

The last premium paid by or for the insured was the quarterly one due May 27, 1927. It was alleged that the insured became totally and permanently disabled prior to September 27, 1927, while the policy was in full force and effect. The insured died in April, 1929. The insured held the position of district manager for the appellant throughout the year 1927, during which time correspondence was had between the insured and the state manager with reference to business of the agency, and mention was made of the fact that insured was unable to work, but there was no statement that the insured was totally and permanently disabled.

The court said:

"Where a life insurance policy provides for an exception to the requirement that premiums be paid within prescribed times in order to keep the policy in force, the rights of the insured and the beneficiary under the policy are forfeited by a failure to pay any premium within the time allowed by provisions on that subject, except in so far as the policy provides for the insurer continuing to be liable notwithstanding a discontinuance of the payment of premiums." (p. 70.)

In the case of *Mid-Continent Life Ins. Co. v. Skye*, 113 Okla. 184,

the supreme court of Oklahoma had before it a policy containing the following:

"After one full annual premium shall have been paid upon this policy and before a default in the payment of any subsequent premium, if the insured shall furnish the company with due proof that he has . . . become wholly disabled . . . commencing with the anniversary of the policy next succeeding the receipt of such proof, the company will on each anniversary waive payment of the premium . . ." (p. 185.)

The insured was permanently disabled on January 28, 1922. The premium was due March 12, 1922, which was not paid, and the company was not notified of the disability. He died February 27, 1923.

The court held that in order to avoid forfeiture of the policy, proof must be furnished while the policy is in force.

In *Wick v. Western Union Life Ins. Co.*, 104 Wash. 129, the insured was a school teacher and by reason of tumor of the brain he was compelled to abandon his school March 31, 1915, and was unable to work at any gainful occupation. The premium was due May 1, 1915. The company notified the insured before the premium was due and again during the running of the grace period. He died December 31, 1915, without notifying the company of his disability. The court held:

"Notice of total disability must be given prior to default and cancellation for nonpayment of premiums, under a policy of life insurance, providing that if the insured, before attaining the age of sixty, shall furnish proof that he 'has,' before default, become wholly disabled, the company shall pay for him all premiums 'which shall become due' during the continuance of the disability; especially in view of other provisions of the policy requiring insured, upon request, to give proof of continuance of the disability, and limiting the period of grace for payments to one month pursuant to Rem. Code, § 6059-184, during which time the policy 'shall remain in full force and effect.'" (Syl. ¶ 2.)

It is impossible to entirely reconcile the two lines of authority. We think, however, that there is a distinction in that in the one line of cases the courts have gone far afield to find an ambiguity in the contract, and have overlooked the fact that the contract does not pretend to insure against disability but merely makes disability, when coupled with proof or notice to the company, a settlement or waiver of the premium. The contract is made for the benefit of the insured. On the one hand the company obligates itself in the event of total disability to carry the insurance without charge to the in-

sured, and on the other hand the insured obligates himself to furnish, while the policy is in force, proof of such disability. The contract is neither unreasonable nor harsh.

Touching the contention that insanity should excuse the furnishing of proof, it will be noted that the law is settled beyond any question that insanity does not excuse the payment of premium, and if it does not excuse the payment of premium there is no reason why it should excuse the failure to furnish proof of disability. On its face the rule may seem harsh, but an examination into the basic principles of the insurance contract is convincing that it is sound and reasonable. The payment of premium is the life of the contract. All actuarial calculations are based upon the payment of premium at the time specified in the contract, and by reason thereof the state is able to determine whether the company can make good its contracts. If the beneficiary may wait until more than a year after the claimed disability and the death of the insured to make the claim of total disability, which is generally a question of fact, then the certainty of liability of insurance companies cannot be established nor the amount of their reserve definitely determined. Anything that destroys the certainty of contracts necessarily affects the whole structure, and the sacredness of contracts should not be unnecessarily invaded or impaired by judicial interpretation.

We are persuaded that when the contract in question is considered in its entirety that it must be held that it was the intent of the parties to provide a means by which the insured might be relieved from the payment of premium, and to entitle him to this benefit he must not only be totally disabled but must furnish proof of disability to the company while the policy is in force.

In view of this conclusion it is not necessary for us to consider or discuss the question of the sufficiency of proof of disability.

The judgment is affirmed.