No. 32,048

WILLIAM D. BOWLING, *Appellee*, v. THE ILLINOIS BANKERS LIFE ASSOCIATION and THE ILLINOIS BANKERS LIFE ASSURANCE COMPANY, *Appellants*.

(41 P. 2d 1012)

Opinion filed March 9, 1935.

*Austin M. Cowan, C. A. McCorkle, J. D. Fair, W. A. Kahrs* and *Robert H. Nelson,* all of Wichita, for the appellants; *Hugh T. Martin* and *L. W. Melburg,* both of Monmouth, Ill., of counsel.

*Benj. F. Hegler, A. V. Roberts* and *Roger P. Almond,* all of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff, William D. Bowling, brought this action for disability benefits under a $4,000 life and accident insurance policy issued by the defendant, Illinois Bankers Life Association. The other defendant was impleaded for reasons of no present concern.

In his petition plaintiff alleged that he was totally and permanently disabled by an accident which happened thus:

In March, 1930, plaintiff drank some Jamaica ginger. This decoction was poisonous, but plaintiff had no knowledge of that fact. It damaged the nerves, tissues and bones of his body and paralyzed his legs and arms. The provision of the policy particularly relied on for a recovery provided:

"IX. *Disability Benefits.*—Upon receipt of satisfactory proof to the Association that the insured has become totally and permanently disabled by accident (result of crime or attempted crime excepted) and will be thereby continuously prevented for life from doing any labor, or the prosecution of any kind of business, then the Association will pay, upon due and sufficient proof, one-half of the face of this policy, and the remainder to the beneficiary at the death of the insured, the policy having been continued in force."

Plaintiff's petition closed with a prayer for judgment for one-half the face of the policy—$2,000.

The principal defendant answered, admitting the execution of the policy sued on, and set up another provision of its terms which reads:

"X. *Proof of Death or Disability.*—Proof of death or disability of the insured must be furnished the Association at its home office upon forms furnished by the Association within six months after the death of the insured or the commencement of the total and permanent disability. No action at law or in equity shall be maintained on any policy of insurance issued by this Association or recovery had unless such proof be so filed  . . ."

Defendant alleged that plaintiff never complied with the provision of the policy just quoted, and not until October 29, 1932, did he attempt to make proof of disability—some two and a half years after

the date of his alleged total and permanent disability. The answer also denied that plaintiff's disability had resulted from an accident within the terms of the policy, but that it was caused by his drinking the Jamaica ginger purposely as a beverage.

. In plaintiff's reply his belated acts to comply with the provisions of the policy were pleaded at length. He alleged that not until shortly before notifying the defendant had he learned that his total disability would be permanent; that following such notification defendant had requested a personal letter from plaintiff's attending physician; that such request was complied with; that thereafter defendant requested a personal affidavit from plaintiff and likewise an affidavit of some personal friend and also an affidavit from plaintiff's regularly attending physician. Defendant further requested plaintiff to submit to a physical examination by a doctor of its choosing, and informed plaintiff that the expense of such examination would have to be borne by plaintiff. Plaintiff alleged that these requirements prescribed by defendant were complied with by him at considerable trouble and expense, and—

"That the defendant, by making said requests of the plaintiff for additional proofs and in putting the plaintiff to the trouble and expense of obtaining and forwarding the same, has waived the requirements of [the] policy . . . sued on, as to the time of giving notice of the commencement of plaintiff's total and permanent disability."

The cause was tried before a jury. Documentary evidence, copies of correspondence between plaintiff's attorney and defendant, and doctors' certificates touching plaintiff's disability were introduced. One of the latter reads:

"WICHITA, KAN., September 17, 1932.

*"To Whom This May Concern:*

"THIS IS TO CERTIFY that Mr. William D. Bowling has had jake paralysis since March, 1930. For several months he was confined to his room. He is now able to get around with the aid of his cane, but is still totally disabled.

. . . . . . . . . . . . . .

"(Signed) W. P. CALLAHAN."
[Surgeon.]

Another doctor's certificate supplied at defendant's request reads:

"WICHITA, KAN.

*"Illinois Bankers Life Assurance Co.:*

. . . . . . . . . . . .

"GENTLEMEN—About March 15th, 1930, I was called to the home of Mr. W. D. Bowling, who was ill. Upon examining him I found that he was suffering from toxic paralysis due to a consumption of Jamaica ginger. Mr.

Bowling was in bed for a period of eight or nine months, and following that time was able to walk with the aid of crutches, which he used one year. Since that time, he has been able to walk with the aid of a cane.

"Mr. Bowling still has a very marked spastic paralysis of both legs and arms, and I see no possibility for further improvements.

. . . . . . . . . . . . . . . .

"(Signed)     J. G. MISSILDINE, M. D.

"September 22, 1932."

In plaintiff's proof of total and permanent disability in a blank form supplied by defendant and dated October 25, 1932, and subscribed by plaintiff, was this recital:

"The claimant agrees that the receiving of this claim by the Illinois Bankers Life Assurance Co. shall in no way bind the said company to allow or pay such claim and that other or additional proofs will be furnished if required by said company."

At the trial plaintiff, a man of 64 years, testified that he had been accustomed to drinking Jamaica ginger since his boyhood; that in March, 1930, he drank some poisonous Jamaica ginger, and—

"The first feeling of pain was in the lower part of my legs, severe pains and unable to balance myself; I couldn't stand still. I was taken sick in some town in southern Texas, and sent for a doctor that night, and he told me I had better go home and I got on the train and went home [to Wichita]. I was in bed on the train practically all of the time, and as quick as I got to Wichita, I sent for Doctor Callahan, or Doctor Missildine, I forget which one I sent for first. I guess I was in bed from six to nine months. I couldn't pick up a match to save my life, I couldn't walk and I couldn't stand up any more than a baby a day old, I couldn't move my feet, I had severe pains in my legs and my hands were all drawn and the muscles just withered away. I remained in bed and was treated by these two physicians and also by an osteopath. At the end of approximately nine months I commenced to hobble around."

"In the latter part of the summer or fall of [1932] I had conversations with Doctor Callahan and Doctor Missildine as to my condition. I think it was either August or September I went to see Doctor Callahan. I reached the point in my physical condition where I realized I was no longer making any improvement. I think it was in 1932, about two years after I was sick, I noticed I wasn't getting any better for two or three months. I ran along there and I was disheartened about it, and I went to him and told him I wasn't making any improvement and asked him if I was going to get well or if I would hobble around that way all of my life."

"When was that? A. I think that was along in August or September."

Doctor Callahan testified:

"Q. Do you happen to remember of a conversation that he [plaintiff] had in your office about September, 1932? . . . A. I do.

. . . . . . . . . . . . . . . .

"Q. Now, at that time, or near that time, did you have a conversation with Mr. Bowling in which you informed him that in your opinion he was totally and permanently disabled? . . . A. I do."

The jury returned a verdict for plaintiff and answered special questions, some of which read:

"1. If you find for the plaintiff, then state on what date this total and permanent disability commenced. A. In March, 1930.

. . . . . . . . . . . .

"3. If you find that the defendants, or either of them, waived the requirement of furnishing proof of disability, within six months after the commencement of permanent and total disability, state what acts or conduct on the part of the defendants, or either of them, constituted such waiver. A. Asking for proofs of his disability upon being notified of same.

"4. If you find that the plaintiff was totally and permanently disabled, then state when the plaintiff first realized that his disability was the result of the Jamaica ginger which he had previously taken. A. March, 1930.

"5. If you find the plaintiff was permanently and totally disabled, then state what caused such permanent and total disability. A. Unknowingly drinking poison Jamaica ginger.

. . . . . . . . . . . .

"7. If . . . when did the plaintiff learn that he was permanently and totally disabled? A. August, 1932.

. . . . . . . . . . . .

"9. Did Mr. Bowling submit proofs of loss to the defendants within six months from the time he realized that he was permanently and totally disabled? A. Yes."

Defendants appeal, urging several errors, the most vital of which is involved in the potency of the express provision of the policy which required that proof of plaintiff's disability must be furnished to defendant within six months after the commencement of the total and permanent disability. The textbooks and decided cases are generally to the effect that such a provision is reasonable. (Vance on Insurance, 2d ed., 785, 786; 5 Joyce's Law of Insurance, 2d ed., § 3283; 7 Couch's Cyclopedia of Insurance Law, § 1538a; 14 R. C. L. 1325, 1326.) Our own cases have recognized the binding force of such a provision. (*Mayse v. Insurance Co.*, 117 Kan. 662, 232 Pac. 865; *Smith v. Missouri State Life Ins. Co.*, 134 Kan. 426, 434, 435, 7 P. 2d 65), although want of compliance with it was excused in the unique case of *Hawthorne v. Protective Association*, 112 Kan. 356, 210 Pac. 1086. But in that case the accident—which was the swallowing of a staple which lodged in the bronchial tube—was not discovered for nearly two years, and during that long interval plaintiff's physicians attributed his ailment variously to

laryngitis, tonsillitis, asthma, hay fever and consumption. (8 Briefs, 112 Kan., Files of State Library.) So, too, in *Beeler v. Continental Casualty Co.*, 121 Kan. 642, 249 Pac. 579, where plaintiff's indisposition was successively attributed to biliousness, malaria, "trouble in the front door," bad teeth, etc.; and not until long after the time specified in the policy for notifying the company was it discovered that his malady was the result of an accidental fall he had sustained when he slipped and fell on some oil pipe. Moreover, in that case, while the time fixed in the contract for notifying the company of the accident was 20 days, this prerequisite was not absolute. Delay was to be excused if notice to the company within the time specified was not reasonably possible.

We do not regard the instant case as analogous to either the Hawthorne case or the Beeler case. Here there was never any doubt about the nature and cause of plaintiff's incapacity—conceding that it was an accident (*Woods v. Provident Life & Accident Ins. Co.*, [Ky. App.] 42 S. W. 2d 499) within the terms of the policy, which defendant insistently disputes. Pursuant to his almost daily custom plaintiff took his usual dram of Jamaica ginger. He "thought it was safer than corn liquor." His statement reads:

"In the first part of March, 1930, I left here for the Rio Grande Valley to effect a land deal. On the way down there the calves of my legs began hurting and continued to pain me. While I was there it got so that I couldn't stand still on my feet, even long enough to shave. I came back to Wichita on the train and immediately went to bed, realizing what my trouble was. I had heard a man say at Wellington, Kan., that there were over 500 cases of 'Jake-leg' in Wichita and I at once knew what I had."

Plaintiff's total and permanent incapacity began in March, 1930. He was bedfast for nine months. His indisposition continued until August, 1932, without material change for the better. Then in the course of a conversation with his physician he avers that for the first time he learned that his disability was total and permanent. If such a transparently self-serving averment may demolish the reasonable and precautionary provision intended for the protection of the insurance company, it might just as well be eliminated from the policy altogether.

In *Fairgrave v. Illinois Bankers Life Assn.*, 211 Ia. 329, the action was to recover for total and permanent disability benefit on an insurance policy issued on November 4, 1910, to Maria Fairgrave. She paid the required premiums until and including the one due on July 1, 1926. On September 5, 1925, the insured suffered a

stroke of paralysis which immediately rendered her totally and permanently disabled. The first notice of such disability was received by the insurance association on July 15, 1927. Liability was denied. The defendant relied on a provision of the policy which read:

"In the event of any certificate of membership or policy of insurance issued by this association becoming a claim against the association by reason of the death or total and permanent disability of any member or policyholder satisfactory proofs shall be furnished upon blanks provided by the association within ninety (90) days after the death of said member or policyholder, or the happening of the total and permanent disability as provided in said certificate or policy of insurance, or claim on account of the death or total and permanent disability of any certificate or policyholder or beneficiary thereof shall be forfeited by failure to furnish the proofs within the time and in the manner above provided." (p. 332.)

The court held:

"An agreement in a policy of insurance against total and permanent disability, specifically providing that all claims shall be forfeited if proof of such disability is not furnished the insurer 'within 90 days after the happening of the total and permanent disability,' is valid and enforceable, . . ." (Syl. ¶ 1.)

In the opinion the court said:

"However hard and cold-blooded the instant decision may seem, with respect to the terms and provisions of the insurance contract, we are committed to the doctrine that, while the laws of the state of Iowa permit parties to make contracts in plain and unmistakable language, this court may not change that language ·and read into the contract other terms, which were not agreed upon at the time of the making of such contract." (p. 336.)

The same rule is enforced in the federal courts, in life and accident cases and fire insurance cases. In *Fidelity-Phenix Fire Ins. Co. v. Haywood,* 71 F. 2d 834, the failure of plaintiff to comply with a provision of the policy requiring proof of loss within 60 days was held binding unless waived. In the opinion it was said:

"Limitations such as this, if reasonable, are valid, and compliance therewith is a condition precedent to the enforcement of the policy. (*Callen v. Massachusetts Protective Association,* 24 F. 2d 694 (C. C. A. 8); *Metropolitan Casualty Insurance Co. v. Johnston,* 247 F. 65 (C. C. A. 3); *Maryland Casualty Co. v. Massey,* 38 F. 2d 724, 71 A. L. R. 1428 (C. C. A. 6); *Niagara Fire Insurance Co. v. Pospisil,* 52 F. 2d 709, 79 A. L. R. 404 (C. C. A. 8)." (p. 836.)

On behalf of appellees, however, it is argued that defendant waived the requirement of proof of disability within six months after the commencement of the total and permanent disability as pre-

scribed in the policy. The grounds relied upon to support plaintiff's theory of waiver have already been stated. The jury found that the waiver consisted of defendant's "asking for proofs of his disability upon being notified of same." (Special Finding No. 3.) Such finding excluded any and all other incidents pleaded by plaintiff to establish a waiver. (64 C. J. 1054-1056, id. 1112; 27 R. C. L. 833-836.) We think it quite clear that in this case the asking for proof of plaintiff's disability did not constitute a waiver of the provision of the policy requiring the presentation of proof within six months. Indeed, the proof supplied by plaintiff in response to defendant's request, upon a form furnished by defendant—which was also according to the terms of the policy—contained the following:

"The claimant agrees that the receiving of this claim by the Illinois Bankers Life Assurance Co. shall in no way bind the said company to allow or pay such claim and that other or additional proofs will be furnished if required by said company."

This court has held that the requiring of proofs of loss did not constitute a waiver of the rights of a fraternal insurance society under the terms of the beneficiary certificate which defines and limits its liability. (*Modern Woodmen v. Taylor,* 67 Kan. 368, 375, 71 Pac. 806.) To a like effect was *Ridgeway v. Modern Woodmen,* 98 Kan. 240, 157 Pac. 1191, L. R. A. 1917a, 1062 and note, where this question is dealt with comprehensively. (See, also, *Alston v. Insurance Co.,* 7 Kan. App. 179, 53 Pac. 784.) On the other hand, we have held that a condition requiring the giving of notice to the insurance company within a specified time will be deemed waived where notice of the injury or death is subsequently given, together with proofs of loss, and the company retains the same without objection, and subsequently calls for and receives additional information and proof respecting the injury and death of the assured. (*Insurance Co. v. Davis,* 59 Kan. 521, 53 Pac. 856.) To like effect were *Erickson v. Commercial Travelers,* 103 Kan. 831, 176 Pac. 989; and *Docking v. National Surety Co.,* 122 Kan. 235, 252 Pac. 201. But in neither of these cases had the defendant taken the precaution to stipulate that the receiving of proofs should in no way bind the company to pay the claim, as in the case at bar. In this case the policy did not require the giving of notice. The prerequisite requirement was the timely furnishing of proofs upon forms to be furnished by the company. In the recent case of *Smith v. Missouri State Life Ins. Co.,* 134 Kan. 426, 7 P. 2d 65, this court said:

"The law is settled that a policy of insurance which is prepared by the insurer will, if there is any ambiguity in the terms of the contract, be solved and the construction adopted in favor of the insured. [Citing cases.] This, however, does not mean that the court will by construction alone make a new contract for the parties or disregard the plain terms and conditions in the policy.

"The sanctity of contracts is vital to our business and economic institutions, and where the parties are contracting within the law, the terms of which are their.own choosing, it is the duty of the court to enforce the contract." (p. 429.)

Defendant urges some other points against the judgment, but they will need no consideration.

The judgment is reversed and the cause remanded with instructions to set aside the judgment and to enter judgment in favor of defendant.