No. 33,882

THE STATE OF KANSAS, *Appellee*, v. BERT R. FERRIS, *Appellant*.

(84 P. 2d 949)

Opinion filed December 10, 1938.

*Ralph H. Noah,* of Beloit, for the appellant.

*Clarence V. Beck,* attorney general, *L. E. Weltmer,* county attorney, and *George E. Teeple,* of Mankato, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: Bert R. Ferris was convicted of the crime of giving a bad check. From a judgment and sentence imposing on him a fine of $125 and costs he appeals.

The controlling facts were these: On or about May 11, 1936, defendant Ferris purchased a laundry property in Mankato from its owner, L. R. Gard, at an agreed price. As part of a requisite down payment Ferris gave Gard a check for $100 drawn on the Deuel County State Bank, of Chappel, Neb., payable to Gard's order.

Gard accepted the check, endorsed and deposited it to his own credit in the First National Bank of Mankato. That bank passed it through the usual commercial channels to the Nebraska bank, where it was dishonored and returned to the Mankato bank bearing on its face these recitals:

"Not sufficient funds; charge of 25c entered."

"PROTESTED for nonpayment. Protest fees, $3.36."

On the reverse side of the check was such a mass of rubber-stamp bank endorsements as to be partially illegible, but certain words thereon could be deciphered:

"Pay to order of any Bank or Trust Co. . . . endorsements guaranteed . . . Federal Reserve Bank, Omaha Branch . . . Kansas City, prior endorsements guaranteed. . . . any bank . . . Federal Reserve Bank of Kansas City . . . Omaha, Nebraska . . . June 22, 193 . . . led June 29, 1936 . . . June 30, 1936."

The prosecuting witness, L. A. Gard, testified that the check came

back unpaid to the Mankato bank and was debited to his account. At his suggestion the check was again put into the usual commercial channels, but again it came back unpaid.

Hence this criminal prosecution, conviction and sentence, and appeal.

Defendant assigns ten errors, but with one exception he argues them all together—his general grievance at the net result.

Looking into his brief for such points as may be worthy of comment, it is first suggested that the evidence was insufficient to take the case to the jury. The payee of the check testified concerning the sale of his laundry business to defendant and another person, and that defendant gave him the check as a down payment on the purchase price. He also testified that defendant told him he did not know whether he had funds in the Nebraska bank to meet the check but that he expected to get his "bonus" (presumably as an ex-soldier), and that if he did not have funds sufficient to meet the check he would get them.

The check was offered in evidence over defendant's objection based on the plethora of notations and endorsements it had accumulated after its execution and delivery to the payee. At first the trial court was inclined to the view that those notations and endorsements were inadmissible, and directed that only the contents of the check at the time it was signed by defendant could be read in evidence. The record reads:

"[Counsel for defendant]: . . . object to any stamps or other notations placed upon the same [check] since then, until they are properly identified. No identification whatever.

"Court: I don't know how you are going to take them off.

.    .    .    .    .    .    .    .    .    .    .    .    .

"[Counsel for state]: That shows the condition of the check at the time it came back, and it is all admissible.

"[Counsel for defendant]: It is not admissible. You have got to show where it has been, and who it has been to. You can't show it by a stamp here.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Court: The only question is whether it has been paid or not.

"[Counsel for defendant]: Or what the condition was at the time it was given.

"Court: Well, there may be some good reason, there may be some legal excuse for not paying it, but the question in this case is, has it been paid or is there a justifiable excuse for it not being paid. . . . I think it will have to be taken care of by instructions, those things are not evidence of certain things, but you can't take them off the check."

As the trial progressed, the court came to the conclusion that the notations and endorsements on the check were admissible as evidence that the check had been presented to the Nebraska bank for payment, but that they should not be considered as evidence that there were no funds or insufficient funds in the bank to pay it. One of the court's instructions to the jury reads:

"17. If you believe from the evidence in this case beyond a reasonable doubt that the defendant made the $100 check in question, and at the time said check was made, in Jewell county, Kansas, the defendant knew he had no funds or credit in the bank with which to pay said check, and that said check was presented to the bank upon which it was drawn for payment, and was not paid, you should find the defendant guilty as charged in the information; otherwise you should find him not guilty; that is, if you entertain a reasonable doubt as to whether or not said check was made, in Jewell county, Kansas, or that the defendant at the time he made said check knew he had no funds or credit in the bank on which said check was drawn to pay it upon presentation to the bank upon which it was drawn for payment, or that said check was paid, you should find the defendant not guilty as charged in the information."

After the jury had retired and deliberated for a time they were brought into court, where the following proceedings occurred:

"Court: Mr. Foreman, I understand you have some request to make.

"Foreman: Your Honor, we would like to have the check and the other written evidence, if we may.

"[Counsel for state]: We have no objection.

"[Counsel for defendant]: Comes now the defendant and objects to the submission of plaintiff's exhibit 2 [the check] to the jury, for the reason that no portion of the same is in evidence, in any respect, except the part that was read in evidence at the time that the offer was made. There has never been an offer made of any part of the check except the part that was read, and all other portions are improper, and should not be considered in any way, because they are not explained in any way.

. . . . . . . . . . . .

"Court: I asked them to read it; the court was under the impression at that time that the rest of the check was not admissible in evidence. Right or wrong, I have come to the conclusion that those endorsements are admissible in evidence as a circumstance in showing where that check had been, and if that is the only objection you have. . . .

"[Counsel for defendant]: We further object, if the court is going to reconsider on it, that any . . .

"Court: I am not reconsidering.

. . . . . . . . . . . . .

"Court: I am going to overrule the objection, and give you a chance to cross-examine on it."

Counsel for defendant then recalled the prosecuting witness for further cross-examination. Redirect examination followed, and then further cross-examination, following which the court revised one of its instructions to read thus:

"The endorsements on the $100 check in question, except the endorsement on the back, 'L. R. Gard,' which is identified, are not positive evidence that the check in evidence was presented to the bank on which it was drawn for payment, but are circumstances tending to show through whose hands the check passed, and may be considered by you together with other evidence and circumstances of the case in determining whether or not the check in question was ever presented to the bank on which it was drawn for payment."

At the suggestion of counsel for defendant, the court also gave the following instruction:

"19a. You are instructed that you cannot consider the stamps or endorsements put on exhibit 2 after it left the hands of Mr. Gard for the purpose of determining whether or not the defendant had funds on deposit in the bank upon which the check was drawn at any time."

The jury returned a verdict finding defendant "guilty of giving a worthless or no-fund check, as charged in the information."

We think the notations and endorsements on the check were admissible as presumptive evidence that it had passed through the regular channels of commercial paper. In *Evans v. Commercial Trust Co.*, 76 Pa. Superior Ct. 304, it was said:

"The commercial business of the world has long ago outgrown conditions upon which many of what were once considered basic rules of evidence were founded. Many of the transactions of modern business could not be successfully established if direct and positive evidence of a witness, who personally knew the details of each step of each transaction, were required. On the question as to whether or not a check was presented for payment, it was sufficient to take the case to the jury, for the plaintiff to show that the check was sent in due course through the clearing house." (Syl. ¶ 2.)

See, also, *Ennis-Baynard Petroleum Co. v. Plainville Mill and Elevator Co.*, and citations, 118 Kan. 202, 205, 235 Pac. 119.

We also think the circumstances attending the deposit of the check in the Mankato bank and of its transmission in the regular course of business by the Mankato bank until its return thereto had competent evidential significance in connection with the fact that at the time the check was given defendant admitted that he didn't know whether he had funds to meet the check or not. The testimony of the prosecuting witness on this point reads:

"Q. . . . was there any conversation, Mr. Gard, between yourself and Mr. Ferris, as to whether or not Mr. Ferris had any money in the bank at that time with which to meet this check? A. Well, he said, he wanted me to,

he made the check out for the 15th day of May, that would give him time [4 days] to get up to the bank up home, get up to the bank and see how he was fixed at the bank, and if he didn't have money enough in the bank to take up the check, he had a friend that would let him have the money."

This court holds that the evidence was sufficient to make a prima facie case against the defendant.

The instructions as finally given were fair, indeed generous, to the defendant, and there is no error in them of which he is entitled to complain.

A point is sought to be made on the verdict, because at the insistence of defendant, the trial court required the state to elect on what phase of the crime charged it would rely for conviction. The record reads:

"Court: I believe I will require them to elect as between delivering and the others, and the other charges, drawing, making or uttering, drawing, making, uttering and issuing.

"[Counsel for state]: We will stand on drawing, making, uttering or issuing.

. . . . . . . . . . . . . . .

"Court: Well, I think drawing and making are identical, and uttering and issuing are identical synonyms.

. . . . . . . . . . . . . .

"[Counsel for state]: I think under this evidence that the acts all constituted the crime.

"[Counsel for defendant]: Evidence, if any.

"[Counsel for state]: Of making, drawing, uttering and issuing.

"Court: Well, if they do all mean the same, there isn't any reason why you shouldn't elect, if there is no difference in them. . . .

"[Counsel for state]: I don't think under the facts of this case it makes any difference. Of course, if the court requires us to elect, we will have to elect, but I can't see what we are electing between.

"Court: I think so. I would have considerable doubt as to whether there is much difference, but if there is not any difference, in this case . . .

"[Counsel for defendant]: If there is no difference they couldn't be prejudiced.

"[Counsel for state]: I can't see that it makes any difference. I think the jury understands those terms. We elect to stand on drawing and making."

Since the evidence all related to a single transaction, and only a single offense was intended to be charged under the statute (G. S. 1935, 21-554), and the information was drawn in conformity with the language of the statute, that defendant unlawfully did "draw, make, utter, issue or deliver" his certain check, there was no good ground for the motion to require the state to elect; and the verdict contained no prejudicial infirmity, since it contained the vital matter, "guilty . . . as charged in the information."

On the motion for a new trial the defendant put on quite a remarkable showing, but it developed not a shadow of doubt of his guilt. Indeed, it showed that he had no account of his own in the Nebraska bank, that his brother did have such an account, and that his brother sometimes let him check on that account and sometimes he did not; and in this instance the brother would not permit it. Moreover, if such an arrangement with his brother would have sufficed as a defense (which we need not decide) it was certainly an affirmative defense, and there was no showing of diligence. Counsel for defendant suggests that the burden in a criminal case never shifts to the defendant. This is too broad a statement of the rule. It never shifts until a prima facie case is established by the state. (8 R. C. L. 171-174.) Thereafter, if there is an affirmative defense which could or might demolish that prima facie case, defendant assumes the risk of nonpersuasion if he fails to tender it. The most familiar example of this important qualification of the rule relating to the burden of proof arises in cases involving the possession of recently stolen goods. (*State v. Bell*, 109 Kan. 767, 771, 201 Pac. 1110, and syl. ¶ 6; *State v. Earley*, 119 Kan. 446, 239 Pac. 981; *State v. Close*, 130 Kan. 497, 498, 287 Pac. 599.) This rule is quite as pertinent in bad-check cases, especially where the bad check is given on an out-of-state bank.

There is no prejudicial error in the record, and the judgment is affirmed.