No. 35,522.

Marko Bozich, *Appellee*, v. The Metropolitan Life Insurance Company, *Appellant.*

(127 P. 2d 499)

Opinion filed July 11, 1942.

*Patrick B. McAnany,* of Kansas City, argued the cause, and *Edwin S. Mc-Anany, Thomas M. Van Cleave, Willard L. Phillips, Bernhard W. Alden* and *Thomas M. Van Cleave, Jr.,* all of Kansas City, were on the briefs for the appellant.

*C. D. Bruce,* of Kansas City, argued the cause for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action on a policy of insurance for $1,000 which defendant issued on the life of Mrs. Helen Bozich in 1922. The named beneficiary was Marko Bozich, husband of the insured.

The consideration for the policy was the payment of semiannual premiums of $14.44 payable in advance. One of the privileges of the policyholder was that after payments of premiums for three years defendant would loan on the policy an amount up to its cash surrender value. If the loan and unpaid interest thereon were not within the cash-surrender value, the policy would become void after one month's notice. Paragraph 5, subparagraph 3, provided that if default in payment of any premium should continue for three

months and if the policy were not returned for its cash-surrender value, it would be continued for a reduced amount of paid-up insurance.

Another provision of the policy was paragraph 10, which, in part, read thus:

"10. If, after this policy has been in force one full year, and before default in the payment of any subsequent premium, the company receives due proof that the insured before attaining the age of sixty years, has become wholly and permanently disabled by bodily injury or disease, so that he is and will be permanently, continuously and wholly prevented thereby from performing any work for compensation or profit, the company will waive payment of each premium as it thereafter becomes due during the insured's said disability."

Other provisions of the policy read:

"No agent is authorized to waive forfeitures or to make, modify or discharge contracts, . . .

"It is understood and agreed:

"2. That no agent, . . . or any other person except the officers at the home office of the company, has power on behalf of the company: . . . (b) to bind the company by making any promises respecting any benefits under any policy issued hereunder."

On the back of the policy was certain printed matter under this caption:

"NOTICE TO POLICY-HOLDER

PLEASE READ YOUR POLICY PROMPTLY

UPON ITS RECEIPT."

This notice admonished the policyholder to notify the company of any change in his address; to give his policy number when writing to the company; to remit payment of premiums by check, draft, or money order payable to the order of the company. This notice also instructed the policyholder touching the time and place of holding its elections of directors and the policyholder's privilege of participating in such elections. It also contained an instruction to promptly report the death of the insured. The notice concluded thus:

"Pay nothing to any representative of the company for preparation of claim papers. Deliver the policy only to the company's representative. The company is glad to pay and there is no necessity for help or alleged influence in collecting.

"It is not necessary to employ an attorney or any other person to collect the insurance under this policy, or to secure any of the benefits it provides."

On July 24, 1928, the insured borrowed $80 on this policy. It was paid off on March 7, 1934, by borrowing a larger sum sufficient to pay the principal debt and the semiannual premium, and $25 in cash which the company paid by its check. A third loan was effected on the policy, the proceeds of which were applied to pay off the second loan; the semiannual premium, and semiannual premiums due on certain policies of insurance on the lives of two children of the insured and her husband. A fourth loan was procured on the policy on August 15, 1935, which canceled the third loan and paid the semiannual premium. A fifth and last loan was effected on February 5, 1936, which extinguished the fourth loan and paid the semiannual premium which had been overdue since December 2, 1935.

The next semiannual premium was due on June 2, 1936, but was not paid. At that time the entire cash surrender or loan value of the policy had been exhausted except a margin of eighty-five cents. On October 15, 1936, defendant sent to the insured its cancellation notice and with it a check for $5.15, which represented the remaining cash-surrender value of the policy and $4.30 which was a dividend on the policy due June 2, 1936. That $5.15 check was not cashed.

The insured died on December 26, 1937.

A demand for payment of the policy was rejected and this action was begun. Plaintiff pleaded certain material facts and alleged the insured obtained the insurance policy through John Yuratovich, agent of the defendant, and that the insured and this plaintiff relied on him to advise them of their rights thereunder; and that for thirty-six months prior to the death of the insured she was totally incapacitated; that Yuratovich who collected the semiannual premiums knew of such incapacity but did not properly advise the insured or the plaintiff of the privilege accorded by the policy which was that after it had been in force for a year, upon due proof received by the company that the insured had become wholly and permanently disabled so that she could not perform any work for compensation or profit, defendant would waive further payment of premiums. A condition of such privilege was that "if the insured shall fail to furnish such proof, . . . all premiums thereafter falling due must be paid in conformity with the conditions of this policy."

Plaintiff's petition further alleged—

"It was the duty of said agent to advise plaintiff and his then wife, but that said agent purposely and on behalf of his employer the defendant herein concealed said knowledge from plaintiff and his wife in order that he could exhaust the cash value of said policy before plaintiff's wife died to the profit of said agent and insurance company, defendant herein; that because Helen Bozich and this plaintiff relied on said agent of defendant to advise them of their just rights under said policy in accordance with the written representations on the back of said policy heretofore set out herein, and said agent did advise them what to do the above loans were under said agent's advice and direction made for payment of premiums unnecessarily and to the detriment of plaintiff and his deceased wife Helen Bozich; . . ."

Defendant's answer contained a general denial, a specific denial that plaintiff or the insured had a right to rely on any agent of defendant to advise them of their rights under the policy, and a specific denial that any recital on the back of the policy under the caption "Notice to Policyholder—Please Read Your Policy Promptly Upon Its Receipt" was any part of the contract or created any rights in plaintiff or the insured.

The answer then pleaded the various loans as summarized above, and that since its check to the insured for $5.15 for the 85 cents balance of the cash-surrender value and for the June, 1936, dividend of $4.30 had not been cashed, it issued paid-up insurance thereon as of June 2, 1936, for what the sum would purchase, to wit, $10, according to a specific provision of the policy (par. 5, subpar. 3) summarized above.

The cause was tried before an advisory jury which returned answers to 25 special questions, some of which read:

"1. Was Helen Bozich totally and permanently disabled prior to her death? A. Yes.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"3. . . . state whether or not the defendant had notice or knowledge of such disability? A. Yes.

"4. . . . state how, when and by whom such notice or knowledge was acquired? A. By observation 36 months prior to death by agent.

"5. Did Helen Bozich or the plaintiff rely upon the defendant to advise them of their rights under the policy? A. Yes.

"6. . . . state whether the defendant had notice of such reliance? A. Yes.

"7. . . . state how, when and by whom such notice was acquired? A. Verbally when policy was delivered June, 1922, by John Yuratovich.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"10. In what matters and to what extent was John Yuratovich authorized to act for and represent the defendant? A. All matters pertaining to terms of policy.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"12. Did Helen Bozich or her husband, the plaintiff, receive the check for $25 introduced in evidence as defendant's exhibit 2? A. (First) Doubtful. (Second) No.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"16. Was it the policy of the defendant insurance company, after the issuance of the policy in question and until the death of Helen Bozich, to look after the health of its policyholders, through its agents, such as Yuratovich? A. Yes.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"18. Did Helen Bozich know of the provisions of the policy referred to therein as No. 10, relating to waiver of premiums by the insurance company, in the event of total and permanent disability? A. No.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"23. Did defendant's agent, Yuratovich, do anything by word or act to conceal from the said Helen Bozich the provision of the policy referred to as clause No. 10 relating to waiver of premium? A. Did not advise.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"26. Was it the duty of said Yuratovich as the defendant's agent to report the sickness or disability of said Helen Bozich, if any, observed or which he was informed of, to the defendant insurance company? A. Yes."

The trial court approved almost all of these findings, including No. 12, and likewise made a number of its own, some of which read:

"3. That on the back of said policy the defendant had in printing the following:

NOTICE TO POLICYHOLDER

[See contents summarized above]

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"That the insured and the plaintiff knew of and relied on said provisions on the back of said policy and they relied on the insurance company, the defendant herein, to provide proper advice on how to secure the benefits of said policy; that the defendant insurance company by its agent John Yuratovich did not properly so advise the insured and the plaintiff. That it was the duty of the defendant and its agent under instructions from defendant insurance company to advise the insured and plaintiff properly in regard to the benefits of said policy; that the said defendant by its agent wrongfully failed to advise the insured and plaintiff of clause 10 in said policy and have them make due proof to the defendant insurance company of the incapacity of the insured to work for wages or profit whereas the premiums would be by the defendant waived and the premiums would be considered as though paid

while such incapacity continued, but said defendant by its said agent John Yuratovich wrongfully advised the insured and plaintiff to make loans on said policy to pay premiums thereon attempting to exhaust the cash value thereof of said policy before the insured's death.

"4. . . . The defendant has accounted for proceeds five loans made to Helen Bozich on security of policy as alleged in answer except that Helen Bozich did not receive and cash check for $25 designated as defendant's exhibit '2' which was part of loan dated 3/9/34.

. . . . . . . . . . . . . .

"8. That insured was totally disabled from doing any work for wages or profit under clause 10 of said policy for a period of 36 months prior to her death, and the defendant by the said John Yuratovich knew of this fact; that it was one of the assigned duties of John Yuratovich as agent of defendant insurance company to observe and inquire and report to the defendant any health disability of the insured; that the said John Yuratovich as agent of defendant did observe and he knew of the disability of the insured from performing any work for wages or profit during the 36 months prior to insured's death. That the defendant by its said agent John Yuratovich wrongfully concealed from the insured the benefits of clause 10 of said policy and had loans made by insured on said policy when the defendant should have had the insured make due proof of the disability of the insured from working for wages or profit whereby no premiums would need to be collected for 36 months prior to insured's death; that the defendant wrongfully had loans executed by insured to pay premiums 18 out of the last 36 months of insured's life."

In its conclusions of law the trial court held that defendant was estopped from claiming that the policy was canceled for nonpayment of premiums, and that defendant was entitled to the full amount of the face of the policy, *plus the $5.15 defendant had invested in $10's worth of paid-up insurance*, likewise $43.32 for premiums collected during the first 18 months of insured's incapacity, also *"$25 cash defendant never paid plaintiff by check as found by the jury and the court;"* likewise $165.70 interest on unpaid amount due plaintiff, totaling $1,239.17. The trial court allowed defendant a credit of $201.35, being the amount of the fifth and last policy loan, and entered final judgment for plaintiff in the sum of $1,037.82 and for costs.

The usual post-trial motions were filed and overruled, and judgment was entered for plaintiff. Defendant appeals, urging various errors which will be considered in sequence.

First, we take note of a suggestion by appellee that this appeal which was perfected on December 24, 1941, was not filed in time to entitle defendant to a review of the trial court's rulings on its de-

murrer to plaintiff's evidence, or the trial court's order sustaining plaintiff's motion to adopt and approve the jury's special findings. On February 24, 1941, the trial court sustained in minor part and overruled in major part a motion by defendant to set aside the advisory jury's answers to special questions, and on that date approved most of the answers. At the outset of the trial defendant had requested the court to make findings of fact and conclusions of law and these were not made until several months later. Out of precaution defendant filed a motion for a new trial on February 27, 1941. This motion was not ruled on, but on March 15, the court sustained a motion by plaintiff for judgment on the jury's special findings which the trial court had approved. But no money judgment was then entered, nor had the trial court yet made its own findings of fact and conclusions of law. Again out of caution, on March 18 defendant filed a motion to set aside the judgment of March 15 approving most of the jury's special findings. The trial court made its own findings of fact and conclusions of law on November 29, 1941. Within three days thereafter defendant filed a motion for a new trial on all the statutory grounds, also a motion to set aside the trial court's findings of fact and conclusions of law. On December 13, these motions were overruled and judgment was entered for plaintiff, and on December 24 notice of appeal was duly served and filed. It is therefore clear that no infirmity inheres in appellant's right to an all-inclusive review, under the latest pertinent provision of the civil code. (G. S. 1941 Supp. 60-3314a; *McElroy v. Ball,* 149 Kan. 284, 87 P. 2d 608; *Miller v. Whistler,* 153 Kan. 329, 331, 110 P. 2d 744.)

Defendant first contends that the evidence did not support a finding that the insured was totally and permanently disabled within the meaning of paragraph 10 of the policy so as to excuse her from making the regular semiannual payments on her policy. While there was no medical testimony touching the woman's ailings and indisposition prior to the last six months of her life, and some of plaintiff's witnesses testified that she had been ailing and complaining during the last ten years of her life, and there was evidence that she had worked in a packing house for wages as late as November, 1934, some three years before she died, yet whatever inconsistency may have inhered in the evidence, and notwithstanding the want of medical testimony to show that the insured was wholly and permanently disabled for the last three years of her life, we think the evidence and the credence to be given it were matters within the competence of the triers of fact and not to be disturbed by appellate review.

A more important question is next presented in the finding that appellant's agent, John Yuratovich, knew that the insured was totally and permanently disabled during the last three years of her life so as to excuse her from making the semiannual payments on her policy. Indeed, the findings of the advisory jury and the trial court are that it was part of his duty to know her condition and to report it to the defendant company.

Defendant contends there was no evidence that Yuratovich did know of her indisposition, and a painstaking reading and rereading of the record fails to reveal any such testimony. Counsel for appellee are very emphatic that Yuratovich did know it, and he prints—but not accurately—lengthy excerpts of Yuratovich's testimony on the assumption that it will support the finding. Thus his counter abstract ostensibly quotes the transcript thus:

Plaintiff testifying—

"Q. Did he [Yuratovich] know that your wife was in the condition that she was? A. Yes."

But the counter abstract omits what immediately follows. It reads:

"[Counsel for Defendant]: We object to that as calling for a conclusion of the witness.

"The Court: Sustained. Stricken out." (Tr., p. 24.)

Yuratovich testified that he did not know that Mrs. Bozich was ailing at the time he last called on her, about June 2, 1936, and at none of the times he went to her home did he find her in bed; she always opened the door for him; he never observed that her legs were swollen or heard her cough or observed that her face was yellow, or complain about being sick; and when he went to her house he always found her fully clothed.

Of course it was the privilege of the triers of fact to disbelieve Yuratovich's testimony, but they had no right to adopt as true the very opposite of his testimony, on no competent evidence whatsoever.

It is gravely contended, however, that it was Yuratovich's duty to know of the physical disability of Mrs. Bozich and to report it to the company. The jury so found (special finding No. 26), and the trial court itself in its special finding No. 8 found "it was one of the assigned duties of John Yuratovich as agent of the defendant insurance company to observe and inquire and report to the defendant any health disability of the insured." But there was no

evidence to support either the jury's finding No. 26 or the quoted excerpt from the trial court's finding No. 8. The only evidence as to the scope of Yuratovich's authority was that he was a soliciting and collecting agent, and the authority of such an agent never goes further than that conferred on him *in writing* by his company (G. S. 1935, 40-239), nor beyond the scope of the license issued to him by the commissioner of insurance. (G. S. 1935, 40-240; *West v. Metropolitan Life Ins. Co.*, 144 Kan. 444, 449, 61 P. 2d 918; *Hudson v. Travelers Ins. Co.*, 149 Kan. 528, 532, 88 P. 2d 1096; *Nixon v. Manhattan Mutual Life Ins. Co.*, 153 Kan. 39, 109 P. 2d 150.)

The trial court attached much significance to the statements on the back of the policy under the caption "Notice to Policyholder," particularly the one which said:

"It is not necessary to employ an attorney or any other person to collect the insurance under this policy, or to secure any of the benefits it provides."

This admonition or advice was not a part of the insurance contract, but even if so, it should not be distorted into a construction that the soliciting and collection agent was assigned to the duty of keeping watch and ward over the physical capacity of the policyholder to discover that she had "become wholly and permanently disabled by bodily injury or disease" so that she had become "permanently, continuously and wholly prevented thereby from performing any work for compensation or profit," and thus entitle her to a waiver of payment of the premiums. Nor was this recital in the notice open to a construction that the insurance company itself would supply the insured with an attorney to collect the benefits provided by the policy. In *Hovhanesian v. New York Life Ins. Co.*, 310 Mass. 626, 39 N. E. 2d 423, the action was to recover for disability benefits on an insurance policy. On the back of the policy was the following:

"NOTICE: It is not necessary for the insured or the beneficiary to employ the agency of any person, firm or corporation, in collecting the insurance under this policy, or in receiving any of its benefits. Time and expense will be saved by writing direct to the home office, 346 and 348 Broadway, New York City." (p. 427.)

Commenting on the significance of that notice, the court said:

"The plaintiff contends, as we understand him, that this provision cast upon the defendant the burden of preserving the plaintiff's rights for him and in effect amounted to a waiver of 'due proof.' We cannot accept this proposition. The requirement of 'due proof' is an important condition included in

the operative part of the policy. It could not have been intended that it should be canceled or neutralized by a 'notice' like this on the back." (p. 427.)

We hold that the quoted language on the back of the policy sued on means exactly what it says, and no more. And it was the company itself that said it, not its soliciting and collecting agent, John Yuratovich. If the insured had complied with the terms of paragraph 10, by furnishing due proof that she was wholly and permanently disabled, and the company had repudiated its admonition that she needed no attorney to secure any of the benefits of the policy she would have had something tangible to complain of. (*Bass v. Annuity Association,* 96 Kan. 205, 150 Pac. 588.) But she furnished no such proof, nor does plaintiff allege that she did. He relies on the inability of the insured to read the English language to excuse her from furnishing such proofs. No insurance company could survive and do business if its reasonable requirements to entitle the insured to the benefits of its contract of insurance are to be judicially brushed aside and disregarded on the ground that the ignorance of the insured prevented her from conforming to those requirements. In *Smith v. Missouri State Life Ins. Co.,* 134 Kan. 426, 430, 7 P. 2d 65, this subject is treated at much length and the authorities carefully examined, and the opinion of the court, written by Mr. Justice Sloan, concludes thus:

"The contract is made for the benefit of the insured. On the one hand the company obligates itself in the event of total disability to carry the insurance without charge to the insured, and on the other hand the insured obligates himself to furnish, while the policy is in force, proof of such disability. The contract is neither unreasonable nor harsh.

"Touching the contention that insanity should excuse the furnishing of proof, it will be noted that the law is settled beyond any question that insanity does not excuse the payment of premium, and if it does not excuse the payment of premium there is no reason why it should excuse the failure to furnish proof of disability." (p. 434.)

See, also, *Bowling v. Illinois Bankers Life Ass'n,* 141 Kan. 377, 41 P. 2d 1012; and *Bott v. Equitable Life Assur. Society,* 147 Kan. 671, 78 P. 2d 860, and citations.

In view of the foregoing the other objections to the special findings and judgment need no discussion; but in reference to the jury's and the trial court's finding that defendant's check for $25 had not been cashed by the payee notwithstanding it passed through the regular channels of commerce and bore plaintiff's endorsement, with the legal consequences attaching thereto, see negotiable-instruments

act, G. S. 1935, 52-401 *et seq.* and annotations; also, *State v. Ferris,* 148 Kan. 663, 84 P. 2d 949, and *Peavy v. Hovey,* 16 Neb. 416, 20 N. W. 272.

Reversed with instructions to enter judgment for defendant.

HARVEY and SMITH, JJ., dissent.